The State *v.* Anderson County.

THE STATE *ex rel.* ROSS *v.* ANDERSON COUNTY.

1. COUNTY BONDS. *Mandamus. Judgment not necessary.* It is not necessary, where *mandamus* is brought to compel a county court to levy a tax to pay bonds or coupons owing by the county, that they should have been merged into judgment.

2. SAME. *Same. Parties.* Nor is it necessary in such proceeding that the county trustee should be made a party defendant to the petition; the justices of the county, constituting the county court of the county, are the proper parties defendant.

3. SAME. *Same. Coupons not due.* Nor does the fact that at the time the *fiat* for the writ was granted, the coupons were not due, interpose any serious ground for refusing relief, it appearing sufficiently on the face of the petition that they would fall due in a few days.

4. SAME. *Bona fide holders. Estoppel.* In a suit by *mandamus* against a county to compel it to levy a tax to pay interest coupons, by a *bona fide* holder of its bonds, whose title accrued before maturity, the county cannot show by way of defense, if the legal authority to issue the bonds is clear, a want of compliance on its part with formalities required by the law authorizing their issuance, or show fraud in their own agents in issuing them. And in such case, where the county has received the consideration for the bonds, it is thereby estopped from impeaching their validity, except by showing a want of authority to issue them.

FROM ANDERSON.

Appeal from the Circuit Court.

SNEED, J., delivered the opinion of the court.

This is a petition for a *mandamus* from the circuit court of Anderson county, filed by the relator against the county court of said county, to enforce a levy of taxes for the payment of certain interest coupons issued by the county in January, 1856, and within three successive years thereafter, with certain county

bonds, in discharge of the county subscription of stock in the Knoxville and Kentucky Railroad Company. A *fiat* was obtained for an alternative writ of *mandamus*, from one of the circuit judges of this State, on the 3d of January, 1874. An amended petition was, by leave of the court, filed at the June term, 1874, of the circuit court of said county. The petition states, in substance, that the county of Anderson, on account of said subscription, issued about one hundred thousand dallars of its bonds about January, 1856, and within three years thereafter, in sums of five hundred dollars and one thousand dollars each, payable thirty years from date, with coupons or interest warrants attached for the payment of interest semi-annually, at the rate of six per cent. per annum. That the relator is the owner and *bona fide* holder, for value, of seven of said bonds, amounting to six thousand dollars, and that fourteen of the interest coupons were due at the time of filing the petition, and fourteen would fall due the 1st of January, 1874. That he had made demand of payment of the county trustee and of the justices composing the said county court. That the said trustee refused to pay, stating that he had been so ordered by the county court, and that the said justices had replied that said coupons would not be paid. That said bonds and coupons are made payable to the Knoxville and Kentucky Railroad Company or bearer, and were issued by authority of law, as they purport on their face, and that there were statutes which authorized their issuance, and made them obligatory on the county.

The State v. Anderson County.

The bonds and coupons are set forth and described
by dates, numbers, and amounts, and it is stated that
the petitioner is the *bona fide* holder for value of all
said coupons as described.    The petition contains this
averment: "That said bonds or warrants have been
recognized by the county court of said county as a
valid debt against said county from the time they
were issued until a short time previous to the com-
mencement of this suit, and that the county has paid
all the interest due upon said bonds up to the 1st
of July, 1872, including the interest due at that date.
The county court has levied and collected taxes for
the payment of said coupons or interest warrants, and
the citizens of said county have paid said taxes for
that purpose, and neither the county court nor any
citizen of said county prosecuted to a successful termi-
nation any suit in law or equity to prevent the issu-
ance of said bonds, nor to prevent their negotiation
by the Knoxville and Kentucky Railroad Company,
and there never was any proceeding instituted, either
by the county or any citizen thereof, to have said
bonds or coupons declared void, nor to prevent their
issuance or negotiation, but the same have been treated
by the county court and the citizens of said county
as a valid debt against said county from the time
they were issued until after the 1st of July, 1873,
and said county has paid the relator on the interest
that has accrued on the bonds mentioned in his peti-
tion ever since he has received said bonds, except the
coupons or interest warrants mentioned in said peti-
tion."    Upon a hearing of the cause by the circuit

The State *v.* Anderson County.

court, the peremptory *mandamus* was refused and the petition dismissed.    The relator has appealed.

There are several minor objections taken to the proceeding by the defendant upon argument in this court, which we do not feel called upon to discuss, further than to observe that, in our opinion, they would interpose no legal barrier to the relief sought. Upon the case made in the petition, it is not necessary that the demand should have been merged into judgment, nor is it essential that the county trustee should be made a party.    The justices of Anderson constituting the county court of said county are the proper parties defendant.    Nor, in our judgment, does the fact that at the time the *fiat* for the writ was obtained some of the coupons were not due, interpose under the facts, any serious ground for refusing the relief even as to them, as it appears on the face of the petition that these coupons would fall due within a few days, and, as the record discloses, they did actually mature before the petition itself was filed in court.    In regard to several of the coupons payable at the Bank of America, it is not fatal to the proceeding that the petition dces not aver a presentment there, even if such presentment in this kind of case were essential, inasmuch as the petition does aver a sufficient excuse in the positive and peremtory refusal of defendants to pay any portion of the coupons.

The main ground of defense, however, presents questions of much public importance, and of much greater difficulty than the preliminary questions thus briefly disposed of.    It is insisted that the county of

Anderson is not liable for these bonds and coupons because they were issued without authority of law. It is certainly clear that the county had no right to contract this debt without legislative authority. But we may observe at the threshold, that after the solemn obligations of the county have been negotiated and thrown upon the commerce of the country, into the hands of *bona fide* holders, who, so far from having notice of any supposed illegality, were encouraged by the county itself, through a series of years, to give them implicit credit. It would require a very grave departure from legislative restrictions to justify the courts in exonerating the county. Indeed, the doctrine of ratification itself would be a legal panacea to all manner of mere irregularities, and must be fatal to the defense, unless it can be shown that the issuance of the bonds in question was *ab initio* void.

By the act of 1852, ch. 117, the several counties of this State were authorized to subscribe for stock in any railroad enterprise located, or to be located, through said counties. This act initiated our system of railroad improvements, and is very liberal in its terms. It prescribed the mode of subscription, how the subscription was to be paid, and gave the circuit courts the power to enforce its provisions by the writ of *mandamus* against the county courts. The act of 1852, ch. 191, authorized certain counties to subscribe stock in any chartered railroad located through said counties, in any amount determined upon, in the manner prescribed by law, and to *issue bonds* for the amount of stock so subscribed, the bonds to bear six

per cent. interest, payable semi-annually, and to fall due in not less *than ten nor more than thirty years from date.* The act of the 18th of February, 1854, ch. 180, applied the foregoing provisions expressly to the county of Anderson. The second section of said act provides that the acts of any of said counties in *voting stock in railroads,* and to issue county bonds for the same, not heretofore provided for by law, shall hereby be declared as valid and binding as though said acts had been strictly in accordance with law.

The Knoxville and Kentucky Railroad Company was chartered in 1852, and was a railroad in which the county of Anderson might lawfully take stock under the act of 1852, ch. 117. But this act of 1852, ch. 117, did not authorize bonds to be issued. We take it to be a sound principle, however, that a county, like another corporation, having a right to create a debt, has also the incidental right to issue the commercial evidences of it, in such form as may be satisfactory to the parties. Under this act of 1852, ch. 117, the county court proceeded, at the March term, 1853, to provide for a subscription of stock in said company, by ordering an election to ascertain the will of the people, as the law prescribed, in which election the question to be voted upon was whether the county would subscribe one hundred thousand dollars of stock in said company, "to be payable *in six annual instalments,*" commencing in 1854. The act of 1852, ch. 117, sec. 8, provided that only thirty-three and one-third per cent. of the subscription of any county should be collected annually. The 12th sec-

tion of said act provides that upon any unexpected demand, when there is no railroad tax on hand, the county court may anticipate the collection of said taxes by the issuance of county warrants, payable as desired by the board of directors, bearing interest at the rate of six per cent. per annum, &c.; but the issuance of bonds was not expressly authorized until done by the act of 1852, ch. 191, which restricted the time of their maturity to not less than ten years nor more than thirty years after date.

We have seen that the act of the 18th February, 1854, ch. 180, applied these provisions expressly to Anderson county. It seems, however, that the county court took no further action upon the proceeding of its March term, 1853, until the July term, 1854—in doubt, perhaps, of the validity thereof; but the Legislature having, on the 18th February, 1854, by said ch. 180, declared said election and proceeding lawful and binding, the county court, in July thereafter, took final action in the matter, by subscribing the stock as the sheriff had reported the people as voting for, and ordering the issuance of coupon bonds, payable at thirty years, with semi-annual interest, just as the law required, but providing by the order that the whole shall be paid in six annual instalments. This last provision, however, was not incorporated in the bonds. Now it is earnestly eargued that these bonds are absolutely void, even in the hands of the relator, and all other persons who have bought them in good faith, because, as alleged, the subscription of stock was on condition that the whole debt be paid in six annual

installments, whereas the bonds postpone the payment for thirty years. This would seem to be an anomalous position for a debtor, to object to an indulgence of thirty years upon a debt at simple interest, when it is so productive and valuable, and at a time when most of that class, both among natural and artificial persons, are importunate for time. But it is, nevertheless, an argument pressed with great ability, and which, upon a hasty view of the question, does not lack the virtue of plausibility. The railroad subscription laws require, among other things, that in the levy and collection of taxes for the liquidation of the semi-annual interest, a certain amount shall be also levied and collected to constitute a sinking fund for the ultimate extinguishment of the bonds. This sinking fund might be invested in some productive way. And it is certainly demonstrable that the country, in the meantime increasing in taxable wealth, population and material prosperity, could not be materially injured even by a much longer postponement of the day of payment. The bonds were, however, afterwards issued in the exact form prescribed by law, impressed at their issuance with the sanction of the popular approval, and nurtured into credit and confidence by the recognition and patronage of the county which issued them, for a long series of years. If, as the worshipful justices propose in the order of July term, 1854, they are still disposed to extinguish this debt in six annual installments, we presume the holders of these bonds will not be found impracticable or refractory in receiving their honest dues.

But, with a full sense of the great magnitude of the interests involved, we have no hesitation in saying that, so far as the rights of these parties have been unfolded to us by the record, there is no ground assumed in the argument which, in a court of conscience or a court of law, can relieve the county of Anderson from this obligation. If the county had been defrauded in the issuance of these bonds; if it had been done without a vote of the people as to the subscription; or, indeed, if the statutes had not been substantially complied with, then the case would be presented in a different aspect. But we have here a submission of the question of subscription to the popular vote; the evidence of its endorsement at the polls; the irregularities of that proceeding cured by subsequent legislation; the issuance of these bonds by the constituted authorities of the county; their circulation from hand to hand as negotiable paper; their recognition by the court and the people as valid obligations for a period of sixteen years; and, after all this, we are asked to declare these bonds unlawful in the hands of innocent holders, who have in good faith invested their money in them, because the bonds are made payable in thirty years, as the law directs, rather than in six annual installments, as it is insisted the people intended. If such was the popular intention, why permit the bonds to issue in the present form? Why allow them to be negotiated? Why submit quietly from year to year, for this long period, to annual drafts of the railroad tax, with full knowledge that the original purpose as to payments in six installments had been per-

17—VOL. 8.

verted and defeated by the issuance of thirty-year bonds? A county, under our law, is a corporation; the citizens are the corporators; the county court the agency through which this mortal immortal acts, and speaks, and hath its being. Like other artificial beings or natural persons, it can ratify the unauthorized acts of its agents. In this case, the county of Anderson has done this thing. There can be no question that it was competent for the Legislature to cure, by subsequent enactment, any mere irregularities in the election of 1853. 16 Wall., 644; 8 Ams. R., 87–108.

We hold that these bonds and coupons were lawfully issued, and that the mere irregularities referred to will not be allowed to defeat the rights of the holders. They are payable to bearer, and transferable by delivery, and subject to the same rules as to the rights of the holders as negotiable bills and notes. *Lexington* v. *Butler*, 14 Wall., 295; *Merce County* v. *Hackett*, 1 Wall., 83. In the latter case it was said, when a county issues its bonds payable to bearer, and solemnly pledges the faith, credit and property of the county under the authority of law, referred to on the face of the bond by date, for their payment, and those bonds pass, *bona fide*, into the hands of holders for value, the county is bound to pay them. It is no defense to the claim of such a holder, that the act referred to on the face of the bonds authorized the county to issue the bonds only and subject to certain restrictions, limitations and conditions, which have not been formally complied with. 1 Wall., 83. In the case of *Pendleton County* v. *Amy*, 13 Wall., 298, it is

The State *v.* Anderson County.

held that a county issuing bonds to a railroad company in payment of stock in the road, which subscription the county was authorized by legislative act to make and to pay for by the issue of bonds, only after certain things directed had been performed, said county may be estopped against asserting that the conditions have not been complied with; * * and an estoppel would take place when the county had received the proper amount of stock for which the bonds were issued—had held it for seventeen years, and was actually enjoying it at the time when pleading a want of authority to subscribe. 13 Wall., 298. And so, in the case of *Grand Chester* v. *Winegar,* 15 Wall., 356, it is held that in a suit against a municipal corporation by a *bona fide* holder of its bonds, whose title accrued before maturity, the corporation cannot show by way of defense, if the legal authority to issue the bonds is clear, a want of compliance on its part with formalities required by the statute, or show fraud in their own agents in issuing them. ·15 Wall., 356. This is a strong case, and bears much analogy to the case in judgment, if not in the facts, in the principles applicable to both alike. In the case in judgment there can be no pretense that the county of Anderson was not authorized by law to make the subscription and to issue the bonds in controversy. No fraud is complained of in the county court, but a mere mistake or irregularity as to the time of payment of the bonds. The amount of the subscription was voted by the people, and *this is the vital thing.* The bonds as issued follow the law as to the time of

payment, whereas a payment in installments, as pro-posed, would have been in derogation of the law,. which requires such bonds to be made payable not less than ten nor more than thirty years after date.. Act 1852, ch. 191, sec. 12; Act 1853–4, ch. 180. It will be seen by reference to these acts that the bonds in controversy were issued in exact and literal compliance with the statutes. They have gone into. the hands of *bona fide* holders. The county of Anderson has received the consideration, and has estopped itself from impeaching their validity, except by showing a want of lawful authority to take the stock and issue the bonds. This they have failed to do.

We might have contented ourselves by resting this. case upon the high authority of the Supreme Court of the United States,—that the bonds on their face import a compliance with the law under which they were issued, and the purchaser was not bound to look further for evidence of a compliance with the condition to the grant of the power (*Conner, &c.,* v. *Aspinwall,* 21 How., 539; *Smith & Hall* v. *Clark County,* 1 Cent. Law Journal, 3)—but, in view of the great importance of the questions involved, we have met them as presented by the able argument of the counsel for the county of Anderson.

Reverse the judgment, and let a peremptory *mandamus* be awarded.