E. S. Boshears *et al. v.* J. I. Foster *et al.**

(*Knoxville.* September Term, 1926.)

Opinion filed December 20, 1926.

1. CHANCERY COURT. Jury demanded and waived. Chancellor's finding.

Where a jury is demanded by complainant, and such is waived at the hearing, and cause heard by the Chancellor upon oral testimony, his finding is the equivalent to the verdict of a jury. (Post, p. 498.)

Citing: Choate v. Sowell, 142 Tenn., 487.

2. COUNTY. County court. Governmental powers.

Where the county has authority to act, as to build and maintain bridges, and does act, its decision in such matters is final and cannot be collaterally attacked. (Post, p. 498.)

Citing: 15 Corpus Juris, 556; Act 1804, ch. 1, sec. 5; Shannon's Code, secs. 1707a1-1710.

3. SAME. Same. Fraud.

It can only be questioned directly in a proceeding against it, where fraud, corruption or collusion is charged. (Post, p. 498.)

Citing: 15 Corpus Juris, 658.

4. COUNTY. County court. Complaint of taxpayers. Issuance of county warrants. Bridges.

Where bridges are constructed in substantial compliance with contracts, and accepted by the county court, and county and its citizens have been using same continuously for some four or five years, and price paid therefor, by warrants, is reasonable, in a litigation between taxpayers and holders of warrants, as to the construction, and materials used, and kindred questions, no allegation of fraud or collusion being charged, and the county not made a party, complainants cannot rely upon questions thus presented in their litigation. (Post, p. 500.)

5. **COUNTY. Power to build bridges.**

The power of counties to build bridges has been repeatedly upheld by this court. • (Post, p. 500.)

Citing: Wood v. Tipton, 66 Tenn., 112; Moses v. Sanford, 70 Tenn., 659; Epperson v. Shelby County, 75 Tenn., 277; Ledbetter v. Turnpike Co., 110 Tenn., 95; Railroad v. Hamblen County, 115 Tenn., 531.

6. **SAME. Same. Bridges.**

Bridges are included in the word "roads." (Post, p. 502.)

Citing: Shannon's Code, sec. 70; Ledbetter v. Turnpike, 110 Tenn., 95.

7. **COUNTY COURT. Issuance of warrants for county purposes.**

Where it is purposed to construct bridges by a county, without the issuance of bonds, and to issue warrants to contractors, drawing interest from date of registration, by contract, the trustee to pay as funds became available, and this done pursuant to statutory provisions for disbursement of county funds, the effect of which is, to establish a mode of reaching money in the county treasury by having one officer to audit and another to pay each claim in a prescribed order. (Post, p. 501.)

Citing: Camp v. Knox County, 71 Tenn., 200; and compilation of statutes there set out of the power and duty of the county officials in such instances.

8. **COUNTY. County court. Validity of contracts. Ratification. Acquiescence.**

Where contracts are made by parties acting for the county under the belief they had such authority, and the county court having authority to contract, acquiesces and cooperates with such parties in doing the work, and by formal resolution approves same, such contract may thus be ratified and adopted—for a county, like an individual, may ratify or adopt what another has done for its benefit, provided the county had authority to do this act. (Post, p. 505.)

Citing: 15 Corpus Juris, 554; State v. Anderson County, 67 Tenn., 253; State ex rel. Bradley v. County Judge of Davidson County, 56 S. W. Rep., 1039, affirmed orally; Gas Light v. Memphis, 93 Tenn., 612; Land Co. v. Jellico, 103 Tenn., 320; State v. City of

Knoxville, 115 Tenn., 175; Keenan & Wade v. Treston, 130 Tenn., 71; Burns v. City of Nashville, 142 Tenn., 541.

Citing and distinguishing from cases: Watterson v. Nashville, 106 Tenn., 410; Kress & Co. v. City of Knoxville, 145 Tenn., 297.

9. **COUNTY. County court. County warrants. Interest thereon.**

Where county lawfully contracts, knowing that it cannot pay for the work, which is a county purpose, when completed, and agrees, by resolution, that deferred payments are to bear interest, such delay supports the promise to pay interest on warrants, from date of registration with trustee until there is money in the treasury, after the date of its passage to pay warrants, and no longer. (Post, p. 503.)

Citing: Ledbetter v. Turnpike Co., 110 Tenn., 95; Davidson County v. Olwill, 72 Tenn., 26.

---

*Headnotes 1. Appeal and Error, 4 C. J., section 2853; 2. Counties, 15 C. J., sections 252, 370; 3. Bridges, 9 C. J., section 8; Counties, 15 C. J., section 308; 4 Bridges, 9 C. J., section 8; Counties, 15 C. J., section 314; 5. Bridges, 9 C. J., section 22; Counties, 15 C. J., section 250.

---

## FROM SCOTT.

---

Appeal from Chancery Court of Scott County.—HON. J. H. WALLACE, Chancellor.

J. H. ANDERSON, C. H. DAVIS, and HOWARD H. BAKER for plaintiff.

CHARLES T. CATES, E. G. FOSTER, H. K. PEMBERTON, and R. B. CASSELL, for defendant.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

The bill in this cause was filed on January 14, 1924, by a number of resident taxpayers of Scott county against

the holders of a number of bridge warrants issued by the judge of the county court to J. I. Foster, and by him assigned to the present holders.

The theory of the bill is that such warrants are void, and the prayer is that the defendants be enjoined from collecting same by suit or otherwise. The county trustee was also made a defendant, and it was sought to enjoin him from paying said warrants.

There is much in the record to indicate that this is a county factional controversy, a matter with which this court is not concerned.

Many questions have been raised, a number of them being rather technical in character, and in this opinion we will only deal with those matters which, in our opinion, merit consideration.

In 1920 and 1921, the defendants, J. I. Foster and E. J. Foster, constructed two bridges for Scott county, one across New River at Cordell, and the other across Clear Fork River at or near the Burnt Mill Ford. The bridges were completed in September, 1921, were received by the county, and have since that date been in use by the county and its citizens.

Warrants were issued in payment, aggregating approximately $37,000, bearing six per cent interest from the date of their registration by the county trustee. They were negotiated by the payees for the purpose of raising funds to pay for labor and material used in constructing said bridges. A part of said warrants, as well as the accrued interest on same, had been paid when the bill was filed.

It was not alleged that the holders of said warrants were threatening suits, but it seems to be conceded that this suit is maintainable if, in fact, the warrants are void.

A jury was demanded by the complainants, but at the hearing a trial by a jury was waived, and the cause was heard by the chancellor upon oral testimony, the effect being that his finding was equivalent to the verdict of a jury. *Choate* v. *Sowell*, 142 Tenn., 487.

The chancellor found that the bridges were constructed in substantial compliance with the contracts; that the county had accepted same, and had been using same continuously, and that the price to be paid, evidenced by the warrants, was reasonable and fair.

A great many questions were injected into the cause as to a construction of the first contract, whether it had been complied with, the quantity of concrete placed in the piers, and kindred questions, which the complainants cannot rely upon for the reason that the county was not made a party, and no allegations of fraud or collusion charged against it.

Where the county has authority to act, an does act, its decision in such matters is final and cannot be collaterally attacked. 15 Corpus Juris, 556. It can only be questioned directly in a proceeding against it where corruption, fraud or collusion is charged. 15 Corpus Juris, 658. It follows that our investigation will be limited to the question of the validity of the warrants.

The power of county courts to build and maintain bridges has been the law of this State since the passage of chapter 1 of the Acts of 1804, the two pertinent provisions of that act being the following:

"5. Be it enacted, That where a bridge shall be necessary over any place when the overseer with his assistance cannot make it, the court of that county wherein such place shall be, is hereby empowered and required to contract and agree for the building, keeping and repairing thereof, and to levy the charge in their county, and when bridges shall be made necessary over any such creek or river which divides one county from another, the court of each county shall join in the agreement for building, keeping and repairing the same, and the charge thereof shall be defrayed by both counties in proportion to the number of taxables in each.

"6. Be it enacted, That all and every contract, agreement and order by the courts of the counties aforesaid, entered into or made, for or concerning the building, keeping or repairing bridges in such manner, as to them shall seem most proper, shall be good against them and their successors."

These provisions were incorporated in the Code of 1858 at sections 1211-1214, and in Shannon's Annotated Code at sections 1707a1-1710.

By chapter 1, section 44, Acts of 1891 (Shannon's Annotated Code, section 1707) it is provided:

"Be it further enacted, That all Acts passed heretofore provided for the working and laying out of public roads, except such as are incorporated in this Act, as well as laws in conflict with this Act, be and the same are hereby repealed, it being the intention of this Act to compile all laws on the subject of working and laying out of public roads, and to include them in this Act; provided, that nothing in this Act shall be taken or construed to in any way alter, impair or abridge the power the county court

now has to build, repair and maintain bridges and turnpikes, and pay for same out of general county funds, nor shall this Act in any way abridge the power of the county court, through commissioners and a superintendent of the county jail or workhouse, to work certain convicts upon any public highway in this State, with the aid and superintendence of the local commissioners and overseer, or independently of them.''

Thus it clearly appears that the Legislature, by general road laws, did not intend to repeal the general powers of county courts to build bridges.

This same purpose finds expression in chapter 750, section 14, of the Acts of 1921, a local road law for Scott county, upon which complainants largely rely.

The power of counties to build bridges has been repeatedly upheld by this court. *Wood* v. *Tipton*, 66 Tenn., 112; *Moses* v. *Sanford*, 70 Tenn., 659; *Epperson* v. *Shelby County*, 75 Tenn., 277; *Ledbetter* v. *Turnpike Co.*, 110 Tenn., 95; *Railroad* v. *Hamblen County*, 115 Tenn., 531.

It would be an unfortunate situation if a bridge across a river on an important highway were swept away by flood and the county court could not replace it until the Legislature met and authorized it.

The situation is this: The county, through its officials, undertook to contract for these bridges; they were duly constructed, accepted by the county, have been constantly used by the public, and they are worth what the county agreed to pay. Are the warrants invalid?

It is fairly deducible from the record that the county needed these bridges, and purposed to construct them without having to issue bonds. It was not contemplated by the parties that they should be paid for when com-

pleted, but that warrants should be issued to the contractors, drawing interest from the date of their registration, and that the trustee should pay them as funds became available. And such was the procedure being followed when the bill in this cause was filed.

In *Camp* v. *Knox County,* 71 Tenn., 200, it was said:

"By the Code, section 421: 'The judge or chairman of the county court shall be the accounting officer and general agent of the county, and as such he shall have power, and it shall be his duty:

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

'4.   To audit all claims for money against the county.

'5.   To draw all warrants on the county treasury.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

'8.   To enter in a book, to be known as the warrant book in the order of business, the number, date, amount and name of the drawee, of each warrant drawn upon the treasury.'

"By the Code, section 422: 'No money shall be drawn out of the treasury of the county except upon the warrant of the judge or chairman of the county court.'

"By the Code, section 427: 'It shall be the duty of the county trustee:

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

'3.   When a warrant is presented to him for payment to enter it in a book kept by him for the purpose, ruled in columns, so as successively to show the number, payee or holder, date, day of presentation, and amount of the same.

'4.   If there be funds in the treasury, not otherwise appropriated, immediately to pay the demand and take up the warrant; otherwise, to deliver it to the owner,

with the number endorsed, and afterward to pay it in its numerical order.'

"By the Code, sections 429, 431, stringent provisions are given for the enforcement of the payment of warrants in accordance with these provisions, under severe penalties on the trustee.

"The effect of these provisions is to establish a mode of reaching money in the county treasury, by having one county officer to audit and another to pay each claim in a prescribed order."

In that case it was held that a county warrant was not negotiable and did not bear interest after demand of payment. But it will be noted that under the code provisions quoted the only method whereby the county can pay its obligations is by warrant drawn by the county judge upon the trustee, and that the latter officer is required to pay warrants in their numerical order.

Does the fact that the warrants in question were to draw interest from the date of their registration render them invalid?

The county court of Scott county passed the following order on the first Monday in October, 1916, to-wit: "Ordered by the court that all road warrants hereafter drawn draw interest from the time registered in the Trustee's office." Bridges are included in the word roads. Shannon's Code, sec. 70; *Ledbetter* v. *Turnpike Co.*, supra.

In *Davidson County* v. *Olwill*, 72 Tenn., 28, the only question involved was whether a warrant issued in 1877 bore interest from date of registration, pursuant to a resolution passed by the county court in 1880, as follows:

"Be it resolved by the county court of the county of Davidson, That all legally issued county warrants now

outstanding, and all county warrants hereafter issued, shall bear interest at the rate of six per cent, from the date of registration by the county trustee.''

The court said: ''The result is, that the latter resolution or order (1880) may be treated as a contract, with existing and future creditors, for the payment of interest on each of their warrants from the date of registration until there is money in the treasury, after the date of its passage, to pay the warrant, and no longer.''

The only distinction between that case and the one here involved is that in the latter the county judge wrote the provision of the resolution into the warrants. The holders of the warrants would be entitled to interest, without the insertion of such provision, but subject to the qualification or limitation specified in *Davidson County* v. *Olwill*, supra.

There is another reason why the provision for interest, in these warrants, does not invalidate them. Where, as in this cause, the county knows that it cannot pay for the bridges when completed, and agrees, as part of the contract, that the deferred payments are to bear interest, such delay supports the promise to pay interest.

In *Davidson County* v. *Olwill*, supra, it was said:

''The rule as to interest on debts against a municipal corporation does not ordinarily differ from that which applies to individuals.''

Such a contract entered into by individuals would certainly be valid, and we see no reason why a county cannot lawfully make such a contract.

For the complainants it is contended that the contracts were irregular in certain particulars and were not executed by the proper officials.

Without passing upon this question, it is sufficient to say that these contracts were executed by parties acting for the county under the belief that they had such authority, and evidently the county court entertained the same opinion for it acquiesced in and cooperated with these parties in doing this work; and when their authority was called in question, by these complainants, it adopted the following resolution:

"In the matter of the order heretofore made by this court ordering a re-measurement of the bridges constructed by J. I. and E. J. Foster, one across New River near Cordell and the other across Clear Fork, near the Old Burnt Mill Ford.

"It is ordered by the court: That the order heretofore made by this court for a re-measurement of said work be and the same is hereby canceled and set aside because said order has been made more than two years and no report made thereon and no revivor of said order has been made more than two years and no report made thereon and no revivor of said order, and because the measurements upon which the work was settled for by the Superintendent of roads of Scott county and contractors was upon investigation, satisfactory to this court, and work properly paid for according to contract, and the report of the superintendent of roads of Scott county, Tenn., as to the construction, measurement and settlement for said work is by this court in all things ratified and affirmed.

"Justices voting for the above resolution namely: James Bleins, Mike Chambers, Marion Marcum, M. J. Robbins, Isaac Reed, W. M. Terry and F. McDonald, and

Justices not voting for resolution W. R. Posey and W. A. Terry.''

After the suit was instituted they passed another resolution to the same effect, in which the action of the complainants was condemned and counsel employed ''to protect the fair name of the county.''

A county, like an individual, may ratify or adopt what another has done for its benefit, provided the county had authority to do the act. This rule is so universally accepted that it is necessary to cite but a few authorities.

In 15 Corpus Juris, 554, it is said:

''Not only may the unauthorized contracts of a county be given validity by curative statutes, but contracts made on behalf of the county, and within the general powers of the county to make, but made in an irregular manner or by agents without the requisite authority, may be ratified by such county through the agents who would have been authorized in the first place to make such contract, and this ratification may be either express or implied, provided some official action by the proper authorities is taken in reference to the particular matter in question. The ratification must be made by the proper authorities in the same capacity in which they were required to act in making the contract in the first instance, and with full knowledge of the existence and nature of the contract in question. The unauthorized agent who made the contract cannot ratify it. It is also essential that the contract be of such a nature that the body assuming to ratify it would have had power to make it in the first instance. A contract wholly unauthorized and void cannot be ratified.''

In *The State* v. *Anderson County,* 67 Tenn., 253, this court said: "Indeed, the doctrine of ratification itself would be a legal panacea to all manner of mere irregularities, and must be fatal to the defense, unless it can be shown that the issuance of the bonds in question was *ab initio* void." To the same effect was the holding in *State ex rel. Bradley* v. *County Judge of Davidson County,* 56 S. W. Rep., 1039, affirmed orally by this court.

Since the county had authority to contract for the building of these bridges and pay for same, the cases of *Watterson* v. *Nashville,* 106 Tenn., 410, and *Kress & Co.* v. *City of Knoxville,* 145 Tenn., 297, and like cases, have no application, but the instant cause falls within the rule announced in *Gas Light Co.* v. *Memphis,* 93 Tenn., 612; *Land Co.* v. *Jellico,* 103 Tenn., 320; *State* v. *City of Knoxville,* 115 Tenn., 175; *Keenan & Wade* v. *Treston,* 130 Tenn., 71, and *Burns* v. *City of Nashville,* 142 Tenn., 541.

We have carefully considered all of the assignments of error relied upon by the complainants and find them without merit.

It results that the decree of the chancellor will be affirmed with costs.