## F. M. UNDERWOOD v. ELIZA HILL.

Eastern Section. January 19, 1929.

Petition for Certiorari denied by Supreme Court, April 13, 1929.

J. F. McNutt, of Rockwood, and Roberts & Roberts, of Nashville, for appellant.

J. Ralph Tedder, of Rockwood, for appellee.

SNODGRASS, J. This is a contest originating in interference with the natural flow of a stream of water, and is between two adjoining landowners. Complainant on October 28, 1925 filed his bill describing his tract, and alleged that:

"There is a stream of water that flows through the above-described tract of land in a northerly direction, until it strikes the defendant's land on the north boundary line of the above described tract of land; and had formerly flowed on the defendant's land in and along a natural channel, after said stream of water had passed off of complainant's land, in and along a natural channel through which it had flowed for more than fifty years, until about three or four years ago, when the defendant constructed a wire fence across said stream of water, at the point where it entered upon her said land in its natural course or channel and placed in the said natural channel of said stream,. just below where it entered upon defendant's land, timber, brush, logs and other debris thereby filled in said natural channel of said stream so as to obstruct and prevent the usual flow of the water in said natural channel, and by reason of said obstruction the flow of the water was diverted from its said natural channel over and upon complainant's land, and caused great and irreparable injury and damage to his said land, by washing out and destroying a road bed upon his said land, over and along which he travelled to and from his residence thereon, and rendered said road impassable; and also causing the overflow of his said lands, and destroying crops growing thereon, and washing off the soil from his fields where same overflowed it."

It was further averred that:

"The complainant, to avoid the water from flowing over and across his said road, and upon his said land, at the point where it had formerly entered upon the defendant's said land, and at great expense to himself, constructed a dam across said road just where the said water had formerly flowed in its natural channel, but the said water would not flow along said natural channel, and it continues to flow along the road and overflow the land of complainant as aforesaid, and that by reason thereof the obstruction placed in said stream of water upon the lands of the defendant, as aforesaid, constitutes a nuisance and should be removed and abated as such."

It was prayed:

"1. That subpoena to answer issue and be served upon the defendant and that she be required to answer this bill, but her oath to her answer is waived.

"2. That an injunction issue to prohibit the defendant from allowing said fence to remain across said stream of water, and the trees. logs and other debris to remain in the natural channel of said stream as aforesaid and that said obstruction be de-

declared a nuisance, and abated by the sheriff at the defendant's expense.

"3. That the complainant may be granted damages for the injuries done as aforesaid, and have such other and further relief as he may be entitled to."

The defendant filed a plea of res adjudicata and accompanied the same with an answer and cross-bill. In her plea she set out:

"That heretofore and before the complainant filed his original bill in this cause, to-wit: on or about January 27, 1925, the defendant herein, Eliza Hill (who is the wife of and known as Mrs. John Hill) filed or brought suit against the complainant F. M. Underwood, before A. T. Grant, a Justice of the Peace for Roane county, Tennessee, styled Mrs. John Hill v. F. M. Underwood, which said suit was brought by the defendant herein (plaintiff in said suit), for the recovery of damages against the complainant herein (who was defendant in said suit), for a sum under $500, because of the said F. M. Underwood 'damning up water and washing out land of plaintiff and by the said Underwood obstructing a waterway and permitting said obstruction to remain in said waterway,' and which said suit was tried before said Justice of the Peace on the 17th day of July, 1925, when judgment was rendered by said justice in favor of the plaintiff, Mrs. John Hill, and against the defendant, F. M. Underwood, for the sum of $250 and costs, from which said judgment the said Underwood prayed and was granted an appeal to the next term of the circuit court of Roane county, Tennessee, where in said circuit court said case was docketed or filed on July 22, 1925, and being numbered or styled on said docket as No. 1824, Mrs. John Hill v. F. M. Underwood, that before the trial of said case in the circuit court, the plaintiff was by the court permitted to amend her original warrant in certain particulars, by the following order which was duly allowed and entered in the case:

"Mrs. John Hill v. F. M. Underwood.     No. 1834.

"In this cause the plaintiff moves the court to allow her to amend her warrant or summons by stating the following after the words 'Complaint of' 'Mrs. John Hill in an action for damages for damming up and washing out land of the plaintiff and by obstructing a waterway on the premises of the defendant, by permitting said obstructions to remain in said waterway and thereby greatly damaging and washing out the land of the plaintiff to her great damage, and she therefore brings this action under the sum of $500.' "

"Which action being heard and understood by the court the same is allowed and accordingly done.

"That after said amendment was made a trial of said case was had on the —— day of August, 1925, before the said circuit court and a jury, the jury in said case returning a verdict in favor of the plaintiff, Mrs. John Hill for the sum of $300 and thereupon the defendant F. M. Underwood made motion for a new trial, which said motion was by the court overruled and disallowed. The court during the hearing of said motion suggested a remittitur of $150 of said amount so reported by the jury, which remittitur was by the said plaintiff accepted, under protest, the judgment was thereupon duly rendered by the court in favor of the plaintiff and against the defendant for $150 and costs of suit, to which the said defendant Underwood excepted, and prayed and was granted an appeal to the Court of Appeals of Tennessee, which appeal was never perfected or made, and later execution was issued on said judgment against said Underwood for the amount thereof with costs, which was by said Underwood paid and satisfied. A certified copy of the record and judgment in said case is filed herewith and made a part hereof, as Exhibit "A" hereto.

"And the defense to said suit by the defendant therein, F. M. Underwood, who is the complainant in this suit, was that the said Underwood sought to relieve himself from liability for damages therein, by attempting to set up as a defense thereto the same matters the complainant herein now brings forward in his original bill herein, and upon the same matters he is basing or predicating his suit in this case, and the same matters were set up and relied upon in said former suit above referred to as a defense thereto; and is now sought or attempted to be set up and relied upon in the complainant's original bill in this case.

"Therefore this defendant pleads said former suit, defense, proceedings, verdict and judgment therein rendered by said circuit court as a complete bar to the complainant's suit herein, and this defendant avers that said adjudication, judgment and verdict is and remains in full force and effect and is a final determination of the cause, and she prays judgment of the court whether she shall be required to answer further, and she prays to be dismissed with her costs.

"(signed)    Eliza Hill.

"J. Ralph Tedder, Atty. for Deft.

"State of Tennessee,

"County of Roane.

"Eliza Hill, the defendant, being duly sworn, makes oath that the contents of the foregoing plea are true.

"Eliza Hill.

"Subscribed and sworn to before me on this 21 day of Nov., 1925.

"J. Ralph Tedder,
"Notary Public."

Issue was joined on this plea. The answer, while substantially admitting that the stream or branch flowed through complainant's land, denied that its course had been correctly described. It was denied that defendant had placed in the channel of said stream or waterway any obstruction of any kind as alleged in the bill. It was insisted that it was not true that anything defendant did caused any overflow or damage to complainant's land. It was insisted that if any damage was in fact done to complainant's land, which was denied, that it was done by the complainant himself, by building and erecting on his lands a large dam and other obstructions to the to the flow of said water, which it was said completely or nearly completely dammed up and obstructed the water in its natural flow or course and caused it to greatly overflow, injure and damage the lands of the defendant, and to destroy grass and crops thereon, etc. It was denied that defendant was indebted to complainant for any reason. It was denied that complainant built the dam for protection of his property; on the contrary it was averred that it was in a spirit of animosity against the defendant, complainant well knowing in its erection he would greatly injure and damage the lands of the defendant, which adjoined. It was denied that any fencing or anything on the land of the defendant was in any way or manner a nuisance or obstruction to said stream as alleged in the bill, and it was insisted that strangely enough he was complaining about matters that he, complainant alone, was responsible for.

The answer then recited substantially the history of the suit at law which was interposed as a plea in bar, and, protesting that it had settled already and adversely to complainant the matters complained of, and averring that in said former suit complainant had admitted under oath that the dam or obstruction he had erected and maintained there had caused the overflow on defendant's lands, and insisting that he is now estopped from coming into this court and in this cause to bring forward the same matters that he presented and relied on in his defense to said former suit, and to attempt to relitigate the same matters in this cause. Said alleged conduct and sworn admission were plead and relied on as an estoppel against him and as a complete bar to the suit.

The answer then assumed the attitude of a cross-bill, described the adjoining lands owned by defendant and cross-complainant, and with reference to the stream of water in question averred that it flowed over and across the land of complainant onto said land of defendant and cross-complainant; that when said stream reached

the line of cross-complainant, it being the line between the parties, it separated its waters, a part of and most of the water flowing down alongside of the fence between the parties and into another channel or creek bed and flowed away; that this section of said stream had flowed in this manner for many, many years, it being, it was averred, the natural channel or creek bed; that a small part of said water flowed into the field of defendant and cross-complainant at or near the point where it reached her lands. The answer and cross-bill then averred:

"Several years ago, and by express contract and agreement with the then owner of the lands now owned by Underwood (original complainant) the then owner of said lands and this cross-complainant changed the flow of a part of said water in order to benefit the lands and convenience of both parties, and to improve the flow of the water in said stream, that what was done was an advantage to both parties."

The answer then continued: That later, after said Underwood had acquired said lands adjoining cross-complainant he, without notice, and secretly and unlawfully, built or erected on said lands, near the fence of and adjacent to the lands of cross-complainant, a large dam about four or five feet high, which was erected across the channel and across the said stream, damming up and diverting the flow of said water, causing it especially in times of high water to greatly overflow and injure the lands of cross-complainant.

The answer and cross-bill then recited the suit in consequence of this action, with its results aforesaid, and that subsequently cross-defendant, without removing the first dam, had constructed a second dam across said stream, erected on an angle so as to throw the water violently onto and over the lands of cross-complainant, greatly damaging her lands by washing them and making ditches thereon, destroying grass and crops, etc. It was averred that by said obstruction so maintained in the face of the decision her damages, he continued to cause the lands of cross-complainant to be overflowed, and that the damages are of a constantly recurring nature, and that since she recovered in said former suit said obstruction, water, etc., has injured and damaged her since the 17th of January, 1925, the date of the bringing of said former suit, in an amount approximately $400, which she charged and averred she was entitled to recover.

A certified copy of the record in the former suit was filed as Exhibit "A", and later the bill was amended so as to ask for the abatement of the obstructions as a nuisance.

A jury was demanded and the cause constituted a jury cause, but the presence of the jury was waived and the issues submitted to the court upon documentary and oral proof.

The court upon the entire record dismissed the original bill and sustained the cross-bill, in a decree embodying his findings, as follows:

"I. That the complainant F. M. Underwood and Eliza Hill are the owners of the respective lands described in the pleadings, and that said lands adjoin. That there is a stream of water that flows through, from or across the lands of the complainant F. M. Underwood in a northerly direction until it reaches an old lane or roadway on the land of complainant between the land of complainant and the land of defendant, and that said stream of water·when it reaches the land or line of defendant Eliza Hill separates and makes two streams, and approximately one-half of the water in said stream leaves said lane or roadway and·flows into and across the land of defendant Eliza Hill, and that approximately one-half of said water flows down said old lane or road in the direction of the Abels Valley road for some distance and then enters and runs into and across the lands of defendant Eliza Hill, and that the said two streams of water again run together and unite after flowing over the lands of Eliza Hill for some distance in a northerly direction, and that the same is natural course or channel of said stream of water, and that said stream of water flowed in said original and natural channel up to the time the complainant and cross-defendant F. M. Underwood built or erected two dams in said channel which were an obstruction to the same and diverted the flow of said stream of water from its natural channel or course.

"II. That a short time prior to January 27, 1925, the complainant and cross-defendant F. M. Underwood wrongfully built or erected in said old lane or roadway on his land and on the natural channel and bed of said stream of water a dam about four or five feet high, which was a complete obstruction to the natural flow of said stream of water and which said dam diverted said stream of water from its natural course or channel and caused said water to overflow, wash, injure and damage the lands of said Eliza Hill defendant, and that in January, 1925, the defendant Eliza Hill brought suit and recovered damages against the complainant F. M. Underwood by reason and because thereof, in the circuit court of Roane county, Tenn.

"That after complainant and cross-defendant F. M. Underwood had paid said judgment for damages against him, he permitted said dam to remain, and then built another and a second dam a few feet up the branch or creek from said first dam, the second dam so erected by said Underwood was about

four or five feet high and about twenty feet long and was built on an angle so as to further obstruct the natural flow of said water and cause said stream of water to more greatly overflow, wash and damage the lands of said Eliza Hill, and that both of said dams diverts the flow of said stream of water from its natural course and channel, and that said dams and obstructions so placed and kept in said natural bed or channel of said stream of water have been and are continuing to cause the lands of Eliza Hill to overflow, wash and damage and to destroy the crops thereon and render said overflowed and washed land unfit for cultivation, and that the complainant and cross-defendant had no right whatever to build nor to maintain said two dams or either of them, and that the same constitute and are a private nuisance and should be abated.

"III. That the defendant and cross-complainant Eliza Hill had not obstructed the natural bed or channel of said stream of water, and had not obstructed the flow of said stream of water on her lands or otherwise, nor had she diverted or changed it from its natural bed or channel, nor did the defendant cause any damage to the lands or roadway on the lands of F. M. Underwood.

"IV. That said dams so built and maintained by complainant and cross-defendant F. M. Underwood caused said stream of water to overflow, wash and damage approximately three and a half acres of the meadow lands of the defendant Eliza Hill, and destroyed the crop thereon for the year of 1925, and that the damage to the defendant and cross-complainant Eliza Hill for the damage to her said land for said period are found and fixed by the court at the sum of $87.50, and which she, the cross-complainant Eliza Hill is entitled to recover from the cross-defendant F. M. Underwood.

"It is therefore ordered, adjudged and decreed by the court as follows:

"(a) That the original bill of the complainant F. M. Underwood be and the same is hereby dismissed, and the injunction therein prayed for is denied, as well as all the relief therein prayed for.

"(b) That the cross-bill of defendant and cross-complainant Eliza Hill be and the same is hereby sustained, and said cross-complainant is awarded and will have and recover of complainant and cross-defendant F. M. Underwood the sum of $83.50 for damages to her said lands for the crop year of 1925, and for the collection of which execution may issue against F. M. Underwood, the cross-defendant.

"(c) That both of said two dams built and maintained by complainant and cross-defendant F. M. Underwood on his said lands and which are above referred to and set out be and the same are hereby adjudged and decreed to be a private nuisance and the source and cause of recurring and continuing injury and damage to the lands of defendant and cross-complainant Eliza Hill, and the said complainant and cross-defendant F. M. Underwood is hereby ordered enjoined and directed by the court to immediately remove both of said two dams and the drift and debris lodged thereon or caused thereby, and to restore said stream of water to the channel or bed or course in which it ran or flowed at the time of his erection of the first of said dams that was erected, and to place the said stream bed or channel back in the condition it was in prior to the erection of said dams, or either of them, so that one-half of the water shall flow down said lane and the other half over property of Eliza Hill as it originally went at time said dams were built, and that unless said complainant and cross-defendant does fully carry out and restore said stream to its said original channel as the same flowed at the time said dams were erected, he shall stand and be in contempt of this court, and the sheriff of this county upon direction from the Clerk and Master, with such assistance as necessary will remove said dams, debris and drift and restore said stream of water to its original bed and channel as it flowed at the time said dams were erected, and in the event said nuisance is abated by the sheriff, it shall be done at the cost of the complainant and cross-defendant F. M. Underwood.

"(d) After said stream or creek is restored to its original or natural channel as it flowed at the time said dams were erected by said cross-defendant F. M. Underwood, if there should be any obstruction in said channel as the same flowed at the time said dams were built on the land of defendant and cross complainant Eliza Hill that would effect the flow of water off of lands of Underwood, the same shall at once be removed by said Eliza Hill so as not to obstruct the flow of said stream.

"(e) The complainant F. M. Underwood and Nan Underwood and John F. McNutt, sureties on complainant's cost bond will pay three-fourths (3/4) of the cost of this cause, and the defendant and cross-complainant Eliza Hill will pay one-fourth (1/4) of the costs of this cause, and for the collection of said costs execution may issue against the respective parties.

"By agreement of the parties and by consent of the court the motion of the complainant F. M. Underwood for a new trial and the action of the court thereon and all other orders that

may be presented to the court after the hearing of said motion for a new trial will be entered on the minutes of the court as of this date, and the records of the present term of court will be kept open for the entry of said orders upon the minutes of the present term.''

A motion for a new trial was made and overruled, and complainant has successfully prosecuted an appeal to this court and assigns errors as follows:

''FIRST: The Chancellor erred in dismissing the original bill of complainant and sustaining the cross bill of defendant, and declaring the dams erected by complainant upon his lands as a private nuisance and directing that same be abated as such nuisance, and directing that said stream of water be restored to its channel as same flowed at the time said dams were built by complainant, because the entire testimony shows that defendant placed or had placed the obstructions in said stream of water, or permitted said obstructions to remain therein, long before said dams were erected, and that defendant should have been required by an order of that court to remove said obstructions so as to permit the flow of the water along said natural channel as it existed before said obstructions were placed therein.

''SECOND: The Chancellor erred in not dismissing the cross-bill, as the entire record shows that because of the obstructions placed in the natural channel of said stream at the point where it entered upon the lands of cross-complainant, and below that point, contributed more toward the overflow of her lands and the damage to her crops growing thereon than the dams that were erected by cross-defendant upon his lands below the natural channel of said stream where it entered upon the lands of cross-complainant, and that cross-complainant was not entitled to have said dams abated as a nuisance unless she should at the same time be required to remove said obstructions from said stream that she had placed therein at the point where the said stream entered upon her land and below that point.

''THIRD: The Chancellor erred in rendering a judgment against cross-defendant for the sum of $87.50, as damages to the lands of cross-complainant because the primary cause of the overflow of her said lands was the obstructions placed in said stream by her, or by her direction.

''FOURTH: The Chancellor erred in taxing the complainant with three-fourths of the costs of the cause, as the entire costs should have been taxed against defendant.

''FIFTH: The Chancellor erred in finding as a fact that defendant Eliza Hill did not obstruct the naturial bed or channel

of said stream of water, and had not obstructed the flow of said stream on her land nor otherwise diverted or changed it from its natural bed or channel, and did not cause any damage to the lands or roadway on the lands of complainant; whereas it was admitted in the answer of defendant that she changed the course of said stream at the place where it entered her lands, and that this was done by contract and agreement between her and the then owner of said land; and because of said admission in said answer all proof in contradiction of said admission was irrelevant and immaterial and the Chancellor should have so found."

It is manifest from the foregoing that the contest here is over the facts, which were passed upon by the Chancellor, and his finding is equivalent to the verdict of a jury.

"Where a jury is demanded by complainant and such is waived at the hearing and the cause heard by the Chancellor upon oral testimony, his finding is equivalent to the verdict of a jury." C. S. Boshears et al. v. J. I. Foster et al., 154 Tenn., 494, citing Choate v. Sewell, 142 Tenn., 487.

In the absence, therefore, of an assignment of error that there no evidence to support this finding or decree of the Chancellor. we would be authorized to affirm the decree under the rules. It may be that, as an original proposition, the testimony in its entirety as insisted in the first assignment, or by a preponderance may have made it to appear that defendant and cross-complainant was the first to place an obstruction in the stream before said dams were erected, but the Chancellor found otherwise, and the assignment does not go to the extent of making the question that there is no proof that would authorize such conclusion. We have, however. notwithstanding, examined the record, and find that there is proof upon which such a conclusion might be predicated.

The same can be said of the second assignment, which is to the same effect. that "the entire record shows that because of obstructions placed in the natural channel of said stream at the point where it entered upon the lands of cross-complainant and below that point contributed more towards the overflow of her lands and the damage to her crops growing thereon than the dams that were erected by cross-defendant upon his land below the natural channel of said stream where it entered upon the lands of cross-complainant; and that cross-complainant was not entitled to have said dams abated as a nuisance. unless she should at the same time be required to remove said obstructions from said stream that she had placed therein at the point where the said stream entered upon her land and below that point."

We are not much impressed with the logic of this insistence as applied to this situation. It is not to be supposed that anyone would voluntarily contribute to his own injury and persist therein. But the Chancellor found that cross-complainant had not done this, notwithstanding he directed that if any artificial obstructions were found on cross-complainant's side that would interfere with the natural flow of the water, that they be removed, which to this extent must be regarded as a conditional modification of the dismissal of the original bill. Defendant and cross-complainant has acquiesced in this provision of the decree, which is all that complainant could have asked, and we do not think he can complain of it, or of any portion of the decree affecting adversely only the defendant to the original bill.

Regarding the building of the two dams, the first one was constructed, it is claimed, to offset the alleged diversion of the water by Mrs. Hill, who it is.insisted set up a post in the bed of the stream or branch and cut an ash tree across it, felling other trees in the branch below. Much proof was taken on this question tending to establish its truth, while it was denied by the proof on the other side. It is insisted that all this denial was mere negative proof, but we do not think under the circumstances it can be so regarded. Some of it was, and some of it was positive negative proof, making such an issue as that a finding either way would be supported. At any rate it was distinctly found that defendant and cross-complainant did not do it; but whether she did or not, if it was there as an obstruction it would be her duty to remove it, and the Chancellor so directed.

As to the dams built by the defendant to the cross-bill, there is no doubt but what they did operate as an interference, for beyond and remedial nature, and as a nuisance. It is quite apparent that at the point where the stream or branch divided that it would require very little interference to divert the flow to some extent, and to build a dam across the channel would have a tendency, whatever its height. to catch the drift and wash, thus building up the channel until its natural accretions would have that effect. It is not disputed but what in times of freshets the bed of the branch claimed by complainant to run on defendant's land and across the lane dividing them, and by cross-complainant to run upon original complainant's land down the old roadway, was inadequate to carry any very largely increased volume of water, and that it had a tendency to spread out and find an escape for itself at various places on the lands of either of the contestants. This would at least have a tendency to establish changes in channels which neither side would be authorized to protect itself against to the injury of the other; and certainly to construct dams with wings

as high as complained of by cross-complainant, to collect and precipitate a larger volume of these freshets upon the neighbor, cannot be defended upon the suggestion that the remains of some old fence line was found to be across the pathway or channel that these waters had cut in going into the fields. However complainant insists, though such insistence was found against, that this obstruction was first made by defendant and cross-complainant, and cites the case of Mayor, etc., of City of Sweetwater v. Pate, et al., Tennessee Chancery, S. W. 480 as authorizing the building of the dams in self protection. As stated, the finding of the Chancellor is against him, and if any modification of this holding in effect can be found in the direction that if such obstructions were found that they be removed, it cannot be claimed to justify the extensive dams with wings that were built, opposing themselves to the flood waters which they collected and precipitated in increased and concentrated volume upon defendant's lands. While the case referred to does hold that in a proper case, when it can be done without a breach of the peace as a defensive measure such obstruction can be made, still it also holds that the defensive obstruction is open to examination in an action brought by the injured party for the purpose of determining whether the obstruction was rightfully interposed, and, even, for the recovery of damages and the abatement of the nuisance.

We are of opinion that the plea of res adjudicata was ineffectual as against the determination of any other or larger issue of subsequent right which the bill presented than the issues of damages determined in the circuit court case in favor of cross-complainant against the original complainant in this case. It would, however, be conclusive as to any damages accruing or claimed as existing previous to the bringing of the law case before the justice, and which terminated in the circuit court. This law case was instituted in January, 1925, terminating sometime later, when, after paying the damages, complainant built a new dam and instituted the present case in the chancery court in which the cross-bill is filed. Therefore neither party could insist upon any readjustment of damages occurring previous to the institution of this law cause, with respect to which it settled up to the time of the bringing of that suit.

Appellant seeks to avoid the effect of the finding of the Chancellor that cross-complainant had not previous to the construction of the first dam placed any obstruction in the branch where it entered her enclosure, by now insisting that it was not an issue; that cross-complainant had so confessed it in her pleading, and that therefore this must be taken as true. It was due to this insistence that a somewhat lengthy statement of the pleadings appears in this opinion, which quotes the paragraphs upon which the insistence is predicated. We do not think it goes to the extent claimed. While the answer

specifically denies the obstruction complained of and set out in the bill, it simply says that ''several years ago and by express contract. and agreement with the then owner of the lands now owned by Underwood, the then owner of said lands and this cross-complainant slightly changed the flow of a part of said water in order to benefit the lands and convenience of both parties, and to improve the flow of the water in said stream, and that what was done was an advantage to both parties.'' As to where and what kind of change was made, other than that it was slight and to benefit both parties, does not appear, nor was any reference made to this alleged agreement in the proof. This we think is far from an admission that the obstruction described in the original bill was made by agreement or otherwise, but if such an agreement was made with——————— to whom Underwood at the time had sold it and had placed him in possession, merely reserving a lien to secure the unpaid purchase money of $5000, through the foreclosure of which he again became possessed of the land, it would not follow that the slight change referred to in the answer and cross-bill was an impairment of the security. However, there was no proof of this alleged slight changes by agreement mentioned in the cross-bill. We are of opinion that in the Chancellor's view of the case, which was authorized from the proof, that his decree reached the merits of the case.

All assignments are therefore overruled and the decree of the Chancellor affirmed, with costs of this court against appellant and his securities. The costs below will remain as adjudged by the Chancellor.

Portrum and Thompson, JJ., concur.