## GREENE COUNTY v. TENNESSEE EASTERN ELECTRIC CO.

## TENNESSEE EASTERN ELECTRIC CO. v. GREENE COUNTY.

### Nos. 5408, 5409.

Circuit Court of Appeals, Sixth Circuit.
April 15, 1930.

S. J. Milligan, of Greeneville, Tenn. (J. F. Swingle and Milligan & Haynes, all of Greeneville, Tenn., on the brief), for Greene County.

B. H. Taylor, of Johnson City, Tenn., and F. H. Parvin, of Greeneville, Tenn. (Cox & Taylor, of Johnson City, Tenn., and Susong, Susong & Parvin, of Greeneville, Tenn., on the brief), for Tennessee Eastern Electric Co.

Before DENISON, MOORMAN, and HICKENLOOPER, Circuit Judges.

MOORMAN, Circuit Judge.

The Tennessee Eastern Electric Company owned a hydroelectric dam in the Nola Chuckey river in Greene county, Tenn., and a steam station in Washington county, Tenn., from which it generated and distributed electricity. To supply the increased demands for its product in this territory, it became necessary for it to expand its facilities. It could either raise its dam or enlarge its steam plant. If it raised the dam, the waters would back up and submerge a county bridge, the Bird bridge, crossing the river above the dam, and render the bridge useless as then constructed. It would result too, in an increase in taxable property in Greene county of more than half a million dollars. Recognizing the advantages which would thus accrue to it from this increase in taxable property, the county agreed, in consideration thereof, to elevate its bridge so that it would not be submerged upon the raising of the dam. It was, however, without funds immediately available for such purpose, and to meet the situation the county court employed the electric company to do the work, agreeing to issue to it in payment therefor nonnegotiable, noninterest-bearing county warrants, in the sum of $15,000, to be used by the electric company in paying taxes on its proposed additional investment. This agreement was formally approved by the court by a resolution of January 6, 1925, pursuant to which the electric company proceeded in good faith with the work, and it had made considerable expenditures thereon when the court, by resolution of April 6, 1925, undertook to rescind the agreement. On April 28, 1925, the court peremptorily ordered the electric company to stop the work, and on May 4, 1925, it determined by resolution to remove the Bird bridge to another location, and to build in its place a new concrete or steel bridge at a cost of $30,000. Pursuant to this resolution, the county authorities took charge of the work which the electric company had been doing, and proceeded to erect a new bridge a short distance therefrom, and to move the old bridge several miles down the river to a point near Easterly's Ferry. In constructing the approaches to the new bridge, the county appropriated lands of the electric company. The electric company completed the raising of its dam, following which the county instituted this suit to recover from the electric company $40,000 in damages alleged to have resulted from the construction. In its answer, the electric company pleaded the resolution of April 6th as a defense; it also asserted counterclaims for the work that it had done on the old bridge and for the value of the land that was taken for the new one. By rejoinder the county attacked the resolution as ultra vires and unconstitutional, and by an amended declaration, which was denied, alleged that the reconstruction contemplated in the resolution of April 6th was impossible of performance and the contract therefor, if there was such a contract, was void.

Upon the trial of the case, the jury found for the plaintiff, on its claim for damages, in the sum of $19,000, and for the defendant on its counterclaims, for work which it did prior to April 28th, in the sum of $3,412.89, and the further sums of $250 for land taken for approaches to the new bridge and $300 incidental damages resulting from the taking. The court suggested a remittitur of $4,000 from the verdict in favor of plaintiff, which was accepted, and judgment was accordingly

entered for the plaintiff in the sum of $15,000, subject to a credit of $3,712.89, the cost of the work which the defendant did and damages incident to the taking of its land. No judgment was rendered on the verdict awarding $250 for the land that was actually taken.

■ It may be conceded that a county court in Tennessee has no authority to tax unequally property in the county, Marr v. Enloe, 1 Yerg. 452, and, notwithstanding Shelby County v. Exposition Co., 96 Tenn. 653, 36 S. W. 694, 33 L. R. A. 717, and State ex rel. v. Powers, 124 Tenn. 553, that it is also without power to loan or pledge the county's credit to a power company for the purpose of inducing the location of a power plant within the county, Const. of Tenn. art: 2, § 29. As these limitations on the power of the county court are relied upon as invalidating its resolution of April 6th, we deem it necessary to state briefly what the rights and duties of the county and the electric company were. The county court had exclusive control over the roads and bridges of the county, including the power to build, repair, maintain, change, or abandon them. Shannon's Code, §§ 1707, 1708, and 1712; Boshears v. Foster, 154 Tenn. 494, 290 S. W. 387. This power necessarily included the right in the court to contract with or permit others to do what it had the power to do. The electric company had the right to raise its dam without the consent of the county (unless the county could successfully resort to injunction), but, if in doing so it destroyed the bridge, it could be made to respond to the county in damages. It was not the duty of the electric company to elevate the bridge. That was a matter within the control of the county, whose duty it was to maintain the bridge for the public, and, if necessary, to elevate it so that it could be used, having, of course, a right of action against the electric company if this was made necessary by the raising of the dam.

■ With these obligations and rights of the parties in mind, we consider the county's claim for damages, and we repeat it was not the right or duty of the electric company to raise the bridge, but that that was a matter within the exclusive control of the county. In the initial negotiations relating to the bridge here involved there were several courses open to the county. It perhaps could have enjoined the raising of the dam, or, remaining quiescent, if the dam were raised and the bridge flooded, it certainly could have sued for damages. In the latter circumstances it also had the right to waive its claim for damages and raise the bridge itself. That is what it elected to do, employing the electric company to do the work. That the work was not done by the electric company was due, not to any fault on its part, but to the fact that the county repudiated its agreement. The resolution of April 6th is to be construed as giving to the electric company permission to raise its dam, with the assurance that there would be no claim for damage resulting therefrom. It was, in short, a waiver of such resulting damages as an inducement to the electric company to raise the dam rather than enlarge its steam plant in another county. After the electric company had acted upon this resolution, the county could not repudiate it and claim damages for the doing of the thing that it had authorized and induced the electric company to do. The doctrine of estoppel may be invoked against a county as well as an individual, Putnam County v. Smith County, 129 Tenn. 394, 164 S. W. 1147; Boone County v. Burlington R. R., 139 U. S. 684, 11 S. Ct. 687, 35 L. Ed. 319; Louisville v. Cumberland Tel. Co., 224 U. S. 649, 32 S. Ct. 572, 56 L. Ed. 934. It is applicable here, and the result is the court should have directed a verdict for the defendant upon this branch of the case.

■ This brings us to the counterclaim. The county having the authority to employ some one to elevate the bridge, and having so employed the electric company, which in good faith entered upon the work, the latter, upon the county's breach of the contract, was entitled to recover as damages therefor the expenditures which it had made up to that time in carrying on the work. It was also entitled to recover the value of the land taken by the county for approaches to the new bridge and the damages resulting to the rest of its land from the taking. The jury found that the value of the land taken was $250, but the court did not enter a judgment upon this finding. Whether the court thought the awards for work done and incidental damages were sufficient to include this item also does not appear. In any event, the question is not raised on the record nor presented in argument.

The judgment on the counterclaim is affirmed, but is reversed as to the claim of plaintiff, with directions for further proceedings consistent herewith.