## J. A. KREIS & CO. *v.* CITY OF KNOXVILLE.*

### (*Knoxville.*   September Term, 1921.)

1. **MUNICIPAL CORPORATIONS.** Verbal agreement by city official to pay for extra work under construction contract held void under charter.

Where during the construction of a pump pit for a city it became necessary to enlarge the pit and the city's commissioner of water-works verbally assured the contractor that he would be paid for the extra work, such agreement was unenforceable, in view of provisions of the city charter that alterations in a contract should not go into effect until the price to be paid should have been agreed upon in writing, signed by the contractor and approved by the board.  (*Post, pp.* 302-304.)

Acts cited and construed: Acts 1907, ch. 207.

Cases cited and approved; Los Angeles v. Toberman, 61 Cal., 199; Van Reipen v. Jersey City, 58 N. J. Law, 262; Carpenter v. Yeadon Borough, 208 Pa., 396; Jersey City Supply Co. v. Jersey City, 71 N. J. Law, 631; Kelley v. Torrington, 80 Conn., 378; Citizens' Bank v. Spencer, 126 Iowa, 101; Detroit v. Michigan Paving Co., 36 Mich., 335; Wiley v. City of Columbus, 109 Ga., 295; Frick v. City of Los Angeles, 115 Cal., 513; City of Paxton v. Bogardus et al., 201 Ill., 628; Gas Light Co. v. Memphis, 93 Tenn., 612; Land Co. v. Jellico, 103 Tenn., 320.

Case cited and distinguished: Watterson v. City of Nashville, 106 Tenn., 410.

2. **MUNICIPAL CORPORATIONS.** Agreement by city commissioners to compromise claim under void contract held invalid.

---

*On power to require destruction of diseased domestic animals without making compensation therefor, see note in 18 L. R. A. (N. S.), 368.

On constitutionality of statute or ordinance providing for destruction of diseased animals, see not in 8 A. L. R., 69.

Kreis & Co. v. City of Knoxville.

Where a verbal agreement by a city's commissioner of waterworks to pay a contractor for extra work under a construction contract was void because not executed according to charter provisions, the fact that the board of commissioners of the city subsequently agreed to compromise the claim could not give it validity. (*Post*, *pp.* 304, 305.)

5. MUNICIPAL CORPORATIONS. One dealing with municipal officers must take notice of limitation of their authority.

One dealing with municipal officers, boards, or committees is bound at his peril to take notice of the limitation of their authority. (*Post*, *p.* 305.)

---

FROM KNOX.

---

Appeal from the Chancery Court of Knox County.—HON. CHARLES HAYS BROWN, Chancellor.

GREEN, WEBB & COWAN, J. W. CULTON and CATES, SMITH & TATE, for appellant.

. J. PIKE POWERS, JR., and ROY H. BEELER, for defendant.

MR. JUSTICE HALL delivered the opinion of the Court.

On April 12, 1917, the city of Knoxville (a municipal corporation) contracted in writing with the complainants to construct or build for it a pump pit in which to install a pump and engine for use in connection with the city's waterworks system according to certain plans and speci-. fications which had been prepared by its engineer prior to letting the contract, for a specified sum.

Complainants entered upon a performance of the contract, and after they had proceeded for some time with the work it was found that the pit, as originally planned, would not be sufficient to accommodate the pump and engine which the city had purchased and desired to install. It, therefore, became necessary to enlarge the pit and complainants, by the verbal authority and direction of the city's commissioner of waterworks, and with assurance from said commissioner of waterworks that they would be paid for the additional and extra work necessary to enlarge the pit to the dimensions required, did additional or extra work in the construction of said pit of the value of $6,377.94, to collect which the present bill was filed by complainants.

The city demurred to the bill upon a number of grounds. Its demurrer was overruled, after which it answered, setting up a number of grounds of defense. One of the grounds of defense was that the contract for this additional or extra work was not made in writing, and that complainants, therefore, could not recover for the same. It is unnecessary to set out the other defenses made by the city in its answer.

The cause was heard by the chancellor upon the pleadings, exhibits thereto, and certain proof taken by the complainants. The defendant offered no proof whatsoever.

The chancellor rendered a decree against the city and in favor of the complainants for $5,761.51, which sum he found the city had obligated itself to pay under a compromise agreement entered into by it with the complainants on September 9, 1919. From this decree the city has appealed to this court, and has assigned the action of the chancellor for error.

There is no dispute as to the facts. The undisputed proof shows that complainants did this additional work on the pump pit with the verbal assurance of the city's commissioner of waterworks that the same would be paid for by the city, and that this additional work cost complainants $6,377.94 more than the city had paid them; that on September 9, 1919, after the present bill had been filed, the commissioners of the city of Knoxville, in regular meeting, ordered a compromise of complainants' claim against the city on account of said additional work, agree·ing to pay complainants the sum of $5,761.51. The following entry appears on the minutes of the city commission;

"J. W. Culton appeared before the commission in regard to the compromising of the suit of J. A. Kreis & Company, now pending in the chancery court, for amounts due on completing the pumping station. On motion of Commissioner Crumbliss, Commissioner Hill voting No, the suit was ordered compromised for $5,761.51, Kreis paying all court courts."

Before this compromise agreement was executed, the board of commissioners, who entered into said agreement, went out of office and were succeeded by the present board of commissioners of the city of Knoxville, who, by resolution, undertook to rescind the action of the old board of commissioners in compromising the claim of complainants, and, payment of said claim in accordance with said compromise agreement being refused by the present commissioners, the present bill was filed, as before stated.

The original contract for the building of said pump pit contains the following provisions:

"Contractor agrees that the commissioners of waterworks shall have the right, when in their opinion it be-

comes necessary in the prosecution of the work, to make alterations or modifications in this contract, whereby the character as well as the quantities may be changed; but such alterations or modifications shall only be made by order of the commissioners of waterworks, and such order shall not go into effect until the price or prices to be paid for the work or materials under such altered or modified contract has been agreed upon in writing and signed by the contractor and the commissioners of waterworks; and said contractor shall not be allowed to recover anything for work or materials caused by any alterations or modifications in this contract, unless an order is made and agreement signed as aforesaid; nor shall said contractor in any case be allowed to recover more for such work and materials than said agreed price or prices; provided, that this condition shall not apply to any item for which a price has been written in the proposal."

Section 46 of the charter of the city of Knoxville (chapter 207, Acts of 1907) provides as follows:

"Be it further enacted, that when, in the opinion of the board of public works, it shall become necessary in the prosecution of any work to make alterations or modifications in the specification or plans of a contract, such alterations or modifications shall be of no effect until the price to be paid for same shall have been agreed upon in writing and signed by the contractor and approved by the board. The total cost of the work, with the addition of the price so agreed upon, shall not exceed the original estimate."

Section 47 provides as follows: "Be it further enacted, that no contractor shall be allowed anything for extra work caused by an alteration or modification, unless an

order is made or an agreement signed as provided in the preceding section, nor shall he in any case be allowed more for such alteration than the price fixed by such agreement."

It will be noted that the first section above quoted provides that contracts for extra or additional work, resulting from alerations or modifications in the plans or specifications of a contract, shall not go into effect until the price to be paid for same shall have been agreed upon in writing and signed by the contractor and approved by the board.

The second section above quoted expressly provides that no contractor shall be allowed anything for extra work caused by an alteration or modification of the plans or specifications, unless an order is made and the agreement signed as provided in the preceding section.

It cannot be controverted, therefore, that the contract upon which complainants seek to recover for the extra or additional work done on the pump pit specified in the original contract was expressly prohibited by these provisions of the city's charter. In other words, the contract for this extra work, being in direct violation of the express provisions of the city's charter, was void under the holding of this court in *Watterson* v. *City of Nashville,* 106 Tenn., 410, 61 S. W., 782.

In that case Mr. Watterson had made a written contract with the board of public works of the city of Nashville to do the carpentry work on its new city hall, and while engaged in the work he was ordered to make certain changes not intended in the original plan, which involved the use of more costly material, said excess cost being $2,-500. Upon receiving this order he gave written notice

to the board of public works that he would demand compensation, and his declaration averred that the president of the board assured him that he would be paid when the contract was completed. He sued for this extra work, for which there was no written contract. The city demurred.

This court, after setting out sections 43 and 44 of the city's charter, which sections are identical with the sections hereinbefore quoted, as constituting a part of the charter of the city of Knoxville, said:

"We think there can be no doubt that these statutory elements are essential to the making of a lawful contract for extra work, and that lacking in them, the contract is void; and that in the face of the inhibitory terms of the charter provisions no action can be maintained in any form to recover from the city the value of such work."

To the same effect is the holding of the court in *Los Angeles* v. *Toberman,* 61 Cal., 199; *Van Reipen* v. *Jersey City,* 58 N. J. Law, 262, 33 Atl., 740; *Carpenter* v. *Yeadon Borough,* 208 Pa., 396, 57 Atl., 837; *Jersey City Supply Co.* v. *Jersey City,* 71 N. J. Law, 631, 60 Atl., 381, 2 Ann. Cas., 507; *Kelley* v. *Torrington,* 80 Conn., 378, 68 Atl., 855; *Citizens' Bank* v. *Spencer,* 126 Iowa, 101, 101 N. W., 643; *Detroit* v. *Michigan Paving Co.,* 36 Mich., 335; *Wiley* v. *City of Columbus,* 109 Ga., 295, 34 S. E., 575; *Frick* v. *City of Los Angeles,* 115 Cal., 513, 47 Pac., 350; *City of Paxton* v. *Bogardus et al.,* 201 Ill., 628, 66 N. E., 853.

In *Watterson* v. *Nashville,* supra, this court, after referring to the cases of *Gas Light Co.* v. *Memphis,* 93 Tenn., 612, 30 S. W., 25, and *Land Co.* v. *Jellico,* 103 Tenn., 320, 52 S. W., 995, which were relied on by the plaintiff Watterson as sustaining his contention that the city was

liable upon the theory that it had accepted the work done by him on its city hall and had received a benefit therefrom, said:

"Thus it will be seen that these cases, while applying the rule of an implied promise from advantages received, and thus giving relief when the innocent party could not have obtained it upon the express contract invalid for irregularity, give no color to the contention that this rule can be availed of in a contract expressly prohibited by the statute."

In that case the court cites a number of authorities in addition to the authorities cited above to sustain its holding.

If those placed in charge of the affairs of a city could wholly disregard the provisions of the city's charter and make contracts in defiance of its provisions it would, in many cases, lead to the financial ruin of the city. Such restrictions in a city's charter are sane, safe, and wholesome. They have the effect of protecting the city's interest, and tend to prevent extravagant and unwarranted expenditures of the city's funds, and they cannot be disregarded.

The board of commissioners had the power to contract for this additional work on the pump pit which it was having constructed, but the city's charter expressly provided how such contract should be made. It expressly provides that the contractor shall not be allowed anything for such extra work unless such work is agreed to in writing and signed by the contractor and approved by the board. There is no contention that these provisions of the charter were complied with. Therefore, complainants cannot recover on either a contract express or implied. The

fact that the board subsequently agreed to compromise complainants' claim cannot give it validity, because the contract under which the work was done was void. And under the provisions of the city's charter complainants were expressly prohibited from receiving anything for said work.

One dealing with municipal officers, boards, or committees is bound at his peril to take notice of the limitation of their authority. 28 Cyc., 649, and the many cases there cited.

The decree of the chancellor is reversed, and complainants' bill is dismissed, with costs.