JOHN V. TROTTER, COMPLAINANT, APPELLANT, *v.* C. S. PETERSON *et al.,* DEFENDANTS, APPELLEES.

(*Nashville,* December Term, 1932.)

Opinion filed May 20, 1933.

144

C. S. LITTLETON and C. B. HUNTER, for complainant, appellant.

HAMBY & ZIEGLER, T. W. STANFIELD, BROWN & SPURLOCK, MILLER, MILLER & MARTIN and T. POPE SHEPHERD, for defendants, appellees.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

This appeal is concerned primarily with the validity of a note executed by the county judge and trustee of Hamilton County to the American Trust and Banking Company, for borrowed money.

The original complainant, John V. Trotter, was Chairman of the County Board of Education in 1926. His administration of the Board's finances having been brought into question, he filed an original bill against the county and its officers, for an accounting. This involved the execution of said note and the disbursement of its proceeds, questioned by the county's answer and cross-bill. Thereupon, under proper orders of the Chan-

cellor, the American Trust and Banking Company, payee and holder of the note, filed its cross-bill for a decree against the county for the amount of the note, with interest and attorney's fees.

The note was executed in the sum of $100,000. During the pendency of the litigation the county, recognizing that a portion of the proceeds had been expended for legitimate county purposes, paid the bank $60,000 principal, and $3,000 interest, this payment having been made and received with reservation that it should not prejudice nor benefit either party in the litigation involving the $40,000 balance.

Sustaining the county's demurrer to the cross-bill, in part, the Chancellor ruled that the note was illegally executed and was not a valid obligation of the county. Overruling the demurrer in part, the Chancellor ruled that the county is liable for any portion of the proceeds of the note which was properly expended for the repair and construction of county school buildings. This ruling was made under an alternative prayer of the cross-bill. Both parties have prosecuted an appeal to this Court and have assigned errors.

The bank concedes the general principle that '' a county cannot, without an enabling act, borrow money or execute its valid notes therefor.'' It asserts the validity of the note as authorized by Private Acts 1925, chapter 470, and a resolution of the County Court of Hamilton County, adopted at its July session, 1925.

By the Act of 1925, Hamilton County was empowered to execute its notes for borrowed money from time to time, the aggregate not to exceed $400,000 at any one time, ''for the purpose of paying off existing indebtedness and to defray and meet current running expenses, in anticipation of current revenues.''

Sections 2, 3 and 4 of this statute place definite and positive restrictions on the power to borrow money, thus conferred on the county. By section 2, it is provided that the power may be exercised "only if and when" the quarterly county court shall "be of opinion that such loans are necessary and shall direct by resolution that such funds be borrowed."

By section 3, it is provided that notes evidencing such indebtedness shall mature at such time or times when the county may have funds in its treasury "derived from taxes levied for the year in which the loan is made to pay off the same."

By section 4, it is provided that the "funds thus borrowed shall be kept separate and apart from all other funds and shall be paid out only on warrants of the county judge or chairman."

By authority of this statute, the County Court of Hamilton County, at its July term, 1925, adopted the resolution relied upon, reciting that the county did not have sufficient money on hand to meet its "current and existing obligations," and that it was necessary that the county "borrow money temporarily to meet such current and existing obligations." The county judge and trustee were accordingly authorized to borrow as much as $400,000 for the county, for a period not exceeding eight months, and to execute the county's notes therefor. The resolution concluded with the direction, as in section 4 of the statute cited, that funds borrowed "shall be kept separate and apart from all other funds and shall be paid out only on warrants of the county judge."

Between July 8, 1925, and October 12, 1925, the county judge and trustee borrowed an aggregate of $400,000, on the authority of this resolution. Between October 12,

1925, and January 6, 1926, additional sums aggregating $250,000 were borrowed. But payments on the earlier loans were made, so that the aggregate indebtedness existing at any one time was not more than $500,000, that being the debt from January 6 to March 1, 1926; an excess of $100,000 over the sum authorized by statute and resolution. This debt was completely paid on May 18, 1926.

Of the $100,000 involved in this litigation, half was borrowed on May 24, 1926, and the balance was borrowed on June 24, 1926, the date of the note in suit.

This money was borrowed for use in the construction and repair of county school buildings; and at the request of the county judge and trustee, the bank entered the proceeds on its books to the credit of "Hamilton County Board of Education, J. V. Trotter, Chairman." The money was withdrawn from that account on checks "signed by J. V. Trotter as Chairman of the Board of Education," and not on the warrant of the county judge, as required by the resolution of July, 1925, and the statute.

The answer and cross-bill of the bank avers: "This defendant was not familiar with the method by which the county officials kept and disbursed county funds."

The answer and cross-bill further shows that the bank made no investigation whatever of the authority of the county judge and trustee to borrow this money for the county. It is averred: "And this defendant was entitled to assume, and did assume, that all preliminary steps, including the one above mentioned (the resolution of the quarterly county court), had been taken. Said note was regular on its face, and this defendant had no notice or knowledge that any preliminary steps or conditions in-

cident to the right of the county judge and county trustee to execute it had been omitted,'' etc.

It seems almost unnecessary to observe that persons dealing with county officers, whose powers and authority are limited by statute, may not with impunity or safety assume that such officers are not acting in excess of their power. Ignorance on the part of a claimant of such an officer's lack of authority to bind the county is not a sufficient predicate upon which to rest a county's liability.

The Chancellor was of opinion and ruled that the resolution adopted by the county court in July, 1925, conferred no authority upon the county judge and trustee to borrow money for the county in May and June, 1926. We think there can be no doubt of the correctness of this conclusion.

The statute of 1925 delegated to the county court the power and duty to determine the existence of necessity for the borrowing of money to meet ''existing indebtedness and to defray and meet current running expenses, in anticipation of current revenues.'' Power and responsibility so delegated to the county court may not be, in turn, delegated by the county court to the county judge and trustee. *Whyte* v. *Mayor of Nashville,* 32 Tenn. (2 Swan), 364, 371; *Taylor* v. *Railroad Company,* 86 Tenn., 228, 247-248, 6 S. W., 393. The statute contemplates that the county court shall determine an existing necessity to meet existing obligations and ''current running expenses.'' The words ''existing'' and ''current'' must be referred to the date of the action of the county court. The county court is not empowered to delegate to its officers the power to determine a future necessity, and consequently may not authorize such officers to borrow money as necessity therefor may arise.

■ It is contended for the bank that the county, through its officers, had uniformly construed the Act of 1925, as well as similar acts dating as far back as 1917, and the resolutions of the county court similar to that of July, 1925, as a "continuing authorization throughout the ensuing year for such borrowing by the judge and trustee as those two officials should find necessary." It is contended that such practical construction of the statute and resolution should control the decree of this Court.

It may be that the county court could lawfully delegate to the designated officers the power to determine the exact amount to be borrowed, within the limit fixed by its resolution, to meet existing obligations and current running expenses. But we think it altogether contrary to the language and spirit of the authorizing statute that the county court should be permitted to empower its officers to make future borrowings to meet a future necessity, not apparent nor existent at the date of the action of the county court.

■ Even under the "practical construction" of the Act and resolution contended for, all that could reasonably be said is that the county judge and trustee were authorized to borrow money from time to time, in anticipation of the tax levy for 1925, the year in which the resolution of the county court was adopted. But the first loan in suit was made in May, 1926, in anticipation of the tax revenues for that year, to carry on work not even in contemplation when the resolution of July, 1925, was adopted, and for which no part of the revenue from 1925 taxes was to be used. By no elasticity of construction can we conclude that the resolution of July, 1925, authorized the borrowing of money in 1926, in anticipation of the revenues of that year.

■ The Chancellor also concluded that the authority of the county judge and trustee, under the resolution of the county court, was exhausted when they had borrowed the aggregate of $400,000. We concur in this ruling. The statute authorizes the county court to repeat its borrowing, provided the total shall not exceed the fixed limit at any one time, but the resolution of the county court did not purport to authorize repeated borrowings by the designated officers. It may be doubted whether a single authorization by the county court could support repeated loans by the judge and trustee.

■ The Chancellor also sustained the contention of the county that it is not liable on the note because the proceeds were paid by the bank to the "Board of Education, J. V. Trotter, Chairman," and not to the county trustee. We concur with the Chancellor in this ruling.

The statute, and the resolution of the county court, relied upon as authority for the transaction, directed that the proceeds of each loan should be "paid out only on warrants of the county judge." The bank's plea of ignorance of this provision is, for obvious reasons, unavailing. The county judge and trustee were without authority to deliver the fund to the chairman of the Board of Education. The statute contemplated that the county judge should issue his warrant to the persons entitled to receive any portion of the fund from the county, and he could not delegate that duty to any other official of the county. The bank not only acquiesced in this dereliction of the county judge, but was the active agent in diverting the fund into the unauthorized channel. Since the proceeds of the note were not paid to any officer of the county entitled to receive them, there is no basis for holding the county liable on the note. As a transaction of

borrowing and lending, it was not contemplated by payment to the borrower.

 The bank pleads that the county court, at its July term, 1926, included in its budget "a sum sufficient for the payment of said $100,000, and for that express purpose;" and at its October term, 1926, fixed the tax rate so as to make provision for the payment of said sum. These acts of the county are urged as a ratification of the loan and note by the county.

The Chancellor ruled that the county could not be held to have ratified the execution of the note, because it was an unlawful and void contract, citing: *Boshears* v. *Foster,* 154 Tenn., 494, 290 S. W., 387; *Kreis & Co.* v. *City of Knoxville,* 145 Tenn., 297, 237 S. W., 55; *Watterson* v. *Nashville,* 106 Tenn., 410, 424, 61 S. W., 782.

We are inclined to agree to the correctness of this ruling of the Chancellor. Assuming that the work of constructing and repairing school buildings had been started when the money was borrowed, and its cost was a then existing obligation of the county, as we think the answer and cross-bill sufficiently avers, the county court had not determined any necessity for the borrowing of money to pay such obligation. Such finding of necessity was, by the enabling statute, made a condition precedent to the power of the county to borrow the money, and without such finding of necessity the power did not exist. Neither before nor after the execution of the note was such a finding of necessity made by the county court. It therefore does not appear that the county court had the power to authorize the borrowing at the time it was done, nor later to ratify it.

But we think a conclusive bar to the theory of ratification lies in the fact that the county court, when it made

provision for the repayment of the loan in the budget and tax rate, is not shown to have had any knowledge or information that the proceeds of the loan were not paid into the county treasury, nor paid out by warrant of the county judge, as required by law. Acts relied upon as a ratification must have been done "with full knowledge of the existence and nature of the contract in question." *Boshears* v. *Foster, supra,* quoting from 15 C. J., 554. The unlawful diversion of the proceeds of the note was effected by the lender at the time the note was executed, and as a part of the transaction of borrowing, and we think nothing subsequently done by the county court, in ignorance of that fact, could properly be held to amount to a ratification of the transaction or contract of its officers. The burden is upon the bank, asserting ratification, to show that the county court had this knowledge or information.

The answer and cross-bill further avers that the county ratified the transaction by employing and paying a special attorney to prosecute the chairman of the Board of Education for his alleged misappropriation of a portion of the proceeds of the loan. The date of that action of the county is not shown. We think no ratification is shown. Regardless of whether the bank or the county must bear the loss, the misappropriation was accomplished by virtue of Trotter's official connection with the county, and the county was justified in assisting the prosecution on either theory.

We therefore affirm the decree of the Chancellor, in so far as it sustains the demurrer of the county to the bank's cross-bill.

▉▉▉▉▉ Hamilton County assigns as error that the Chancellor erred in overruling paragraph II of its de-

murrer to the cross-bill, and in thereby holding it liable to repay that portion of the proceeds of the loan which was properly expended and used in the construction and repair of county school buildings.

The cross-bill avers that all of the proceeds of the loan were ''applied by Hamilton County for the acquisition, erection, equipment and repairing of Hamilton County school buildings, and for the payment of interest on Hamilton County indebtedness, and for legitimate county purposes.''

The determination of this issue is difficult, and the question is not free from doubt. The briefs of counsel, devoted to the primary issue of the validity of the note, ignore this alternative issue, except that the county contends that it should not be forced into a ''long and expensive accounting as to just how much of this money was paid into school buildings, how much was wasted, how much misapplied and how much stolen.''

The county can be charged on this issue only on the theory of an implied promise to reimburse the bank for its funds which were used in the improvement of the county's property. *Madison County* v. *Gibbs,* 77 Tenn. (9 Lea), 383; *Gaslight Co.* v. *Memphis,* 93 Tenn., 612, 30 S. W., 25; *Land Co.* v. *Jellico,* 103 Tenn., 320, 52 S. W., 995; *Burns* v. *Nashville,* 142 Tenn., 541, 591-597, 221 S. W., 848.

In *Kreis & Co.* v. *City of Knoxville,* 145 Tenn., 297, 237 S. W., 55, and *Watterson* v. *Nashville,* 106 Tenn., 410, 61 S. W., 782, the theory of an implied promise to compensate a contractor, whose contract was unenforceable, was denied because of charter provisions expressly repugnant to such theory.

In *Gaslight Company* v. *Memphis, supra,* quoted with

approval in *Burns* v. *Nashville,* this Court said: "If the city obtain money of another by mistake by or without authority of law, it is her duty to refund it, not from any contract entered into by her on the subject, but from general obligation to do justice, which binds all persons whether natural or artificial."

The construction and repair of the school buildings in question was authorized by the county court at its April term, 1926, prior to the transactions with the bank. If the funds of the bank had not been used, the cost of the work would have been a proper charge against the tax revenues for that year, included in the budget adopted in July and in the tax rate fixed in October. To the extent that the funds of the bank were used in the payment of proper charges against the county for this work, it thus appears that the county treasury was directly benefited and augmented. Waiving entirely the theory of a loan by the bank to the county, we are of opinion that the county should be required to refund to the bank that part of its money which can be identified as having been expended to satisfy the items of expense for which the county was legally liable, on the theory of implied promise recognized in the cases cited.

The decree of the Chancellor will therefore be affirmed, and the cause remanded. The costs of the appeal are adjudged against the cross-complainant, American Trust and Banking Company, and its sureties.