CARTER COUNTY v. WILLIAMS et al. No. 1.—190 S. W. (2d) 311.

Eastern Section. July 10, 1945.

Petition for Certiorari denied by Supreme Court, October 6, 1945.

K. P. Banks, of Elizabethton, and Frank Bryant, of Johnson City, for appellant, Carter County.

M. S. Bangs, W. R. Pearson, R. C. Campbell, J. Malcolm Shull, Geo. F. Dugger, and J. Frank Seiler, all of Elizabethton, Donaldson, Montgomery & Kennerly, of Knoxville, and Guinn & Mitchell, McKinley Green, and Simmonds & Bowman, all of Johnson City, for various appellees.

McAMIS, J.   For a statement of the issues and pleadings on this appeal by Carter County we adopt the following fair and clear statement from one of the excellent briefs filed in the case:

"This was a suit filed by Carter County as complainant in the Chancery Court of Carter County, Tennessee, against two of its officials, James N. Julian, County Judge; and Bailey E. Williams, Superintendent of Roads, and the sureties on their official bonds, as well as against various and sundry persons and firms who claimed to hold unpaid bills against Carter County for materials, equipment, and supplies furnished said county. Extensive proof was taken by all the parties and the case argued before the Chancellor, and written briefs filed in support of the various contentions of all parties.

"The allegations of the original bill are too lengthy to be recited in any detail. The bill was filed by Carter County for declaratory judgment against sixty (60) named defendants and also seeking judgments over against Williams, the Superintendent of Roads; and Julian, the County Judge, and the sureties on their bonds, in the event Carter County was held liable for the material, equipment and supplies furnished to said county by the named defendants. . . .

"The bill averred that Bailey E. Williams served as Superintendent of Roads from September 1, 1940, to September 1, 1942, and that said Road Department received from the State of Tennessee, as its pro rata part of the gas tax fund, $125,904.08; and in addition received a net amount of $47,067.31 from various and sundry sources.

"The bill further averred that the net amount legally received for roads in Carter County for said two year period was the sum of $172,983.92.

"The bill further averred that the defendants, Williams and Julian, against this amount issued warrants in the total amount of $173,574.25, and in addition have created, or attempted to create, outstanding obligations for Carter County in the amount of $30,378.45.

"The bill further avers that Julian and Williams, and their sureties, are liable to Carter County for any amount, or amounts, by which they have exceeded the income of the Road Department of Carter County under the so-called 'Cash Basis Law;' and under the provisions of the bonds of said Williams and Julian governing the distribution and paying out of the gas tax fund paid into the county.; that in the event Carter County, or the Carter County Road Department, is liable for any or all of said items as described in the bill, then it prays that it have judgment against the said Julian and the surety on his bond, and Williams and the surety on his bond, for such excess over the amount received for disbursement.

"The bill further avers in detail, that Julian and Williams sought to buy certain equipment that the purchase had not been approved by the County Court, which exceeded the sum of $500; that it is advised that it is not likely that any of said equipment at all was regularly purchased and that it is not bound to accept it for the reason that there were no purchase orders and that the purchases exceeded $500 each in amount, 'and with respect to the item of the Bullgrader an absolute fraud was practiced on the County.'

"The bill further avers that Julian and Williams purchased fifty (50) tires for vehicles of the County Highway Department and that the successor of the road superintendent was only able to find three tires on the equipment belonging to the county. It charges that as a result of the purchase of tires, that both Williams and Julian misappropriated county funds and that they and their bondsmen are liable for the amount thereof. . . ."

The Chancellor, in a carefully prepared opinion, held the provisions of Chap. 145 of Private Acts of 1941, requiring a purchase order from the County Judge before

the Highway Commissioner could commit the county to a purchase contract and other provisions of the Act, were directory and not mandatory; that all claimants were entitled to recover whether or not the purchase order had been procured before the sale and delivery of supplies and materials; that the county was not entitled to judgment over against either the County Judge or Highway Commissioner and sureties on their respective bonds because there was no loss to the county since it needed the materials and used them on its highways; that there was no fraud or bad faith shown by the proof; and that the county was not entitled to recover against the County Judge and Highway Commissioner for allegedly exceeding the budget because the County Court and not the Highway Commissioner or County Judge is charged with the duty of establishing a budget for various departments of the county and failed to fix a budget for the Highway Department. It was also held that the Private Act relied upon by the county contemplated the fixing of a budget and the county having failed to fix a budget the Commissioner of Highways could not tell in advance how much the levy for highways and State gas tax would yield and, consequently, could not be held liable for exceeding a non-existent or hypothetical budget.

▮ A careful consideration of the evidence convinces us that the Chancellor was correct in exculpating these officials of fraud or intentional wrongdoing. As the Chancellor found they were faced with many perplexing difficulties due to war conditions and resulting increases in the cost of labor and materials, complicated by one of the most disastrous floods in the history of the county, and we agree that they attempted to make the best of conditions under which they were forced to operate.

Since the case turns largely on the interpretation of Section 8 of Chap. 145 of the Private Acts of 1941 we quote it in full:

"Be it further enacted, That it shall be the duty of said Superintendent of Roads to keep an accurate account of all expenditures upon the road fund or other funds belonging to said counties, and he shall not enter into contracts for the purchase of any equipment, materials or supplies without first obtaining a purchase order issued by the County Chairman or County Judge, the fiscal agent of said counties, and without such purchase order the said Superintendent of Roads shall not have power to bind said counties or make commitments for expenditures.

"It shall be the duty of said Superintendent of Roads to file with the County Chairman or County Judge for payment, on or before the first day of each month, a list of his employees with the amount due each, as well as an itemized statement of all purchase orders, said statement to be made upon oath, and said Superintendent of Roads shall not hire employees or make requisition of purchase orders in excess of budget appropriations for those purposes including the pro rata part of the State gas tax fund (two-cent gas tax fund) available to said counties. Said Superintendent of Roads and the sureties on his bond shall be liable for all expenditures or any commitments in excess of budget appropriations for those purposes, including the pro rata of the State gas tax fund available to said counties."

▮ Even if construed to be mandatory in fixing the duties of the Highway Commissioner in relation to his principal, the county, we believe a fair interpretation of the Act as a whole must lead to the conclusion that failure to procure a purchase order in advance of the purchase

would not impose liability on the Commissioner. The Act is articulate in providing that if the Commissioner makes commitments in excess of the budget he and the surety on his bond shall be liable. But we find no such provision in event the Commissioner, in violation of the statute, makes a purchase or undertakes to commit the county without first obtaining a purchase order. If the Legislature had intended to impose such a penalty for running afoul of this provision of the Act as well as the one relating to the budget it is reasonable to assume that it would have found apt words to accomplish that end.

In providing that the Commissioner should not have power to bind the county without a purchase order the language is that without such purchase order the county would not be bound. There is no requirement that the order must have been obtained first in point of time and to so construe the Act would require the concurrent action of both the Commissioner and the County Judge before the credit of the county could be committed even in an emergency, as for the purchase of repairs for road machinery or of materials needed to keep highway officials and employees at work. We cannot believe it was intended that the Commissioner would have to obtain a purchase order before he could order a bolt or a keg of nails or that painters would have to remain idle on the job while the Commissioner hunts for the County Judge and obtains a purchase order. As appears from the proof to so construe the Act would create an expensive and irksome condition which would greatly impair the efficiency of the Highway Department and such a construction should be avoided if possible without doing violence to the sense and purpose of the Act. See Trapp v. McCormick, 175 Tenn. 1, at page 10, 130 S. W. (2d) 122.

■ We think the Act is not to be construed as requiring the antecedent issuance of a purchase order before the county would become bound and that if the order is issued within such reasonable time as to afford the County Judge an opportunity to investigate and discharge his duty of safeguarding the rights of the county a valid and enforceable obligation against the county comes into being when the order is signed.

■ However, we cannot follow the argument that such an obligation can be created without a purchase order ever having been signed by the County Judge. On the contrary, we think such an order is imperatively required by the plain language that "without such purchase order the said Superintendent of Roads shall not have power to bind said counties or make commitments for expenditures." This language is clear beyond doubt and we could not justify reading out of the Act a provision free of any ambiguity under the guise of interpretation not needed to determine its meaning.

■ The State or one of its subdivisions is not bound by the act of its agent unless the agent was acting within the scope of his authority and ignorance of legal limitations upon the authority of public officials is no excuse. Every one dealing with them must take notice of such limitations. Kreis & Co. v. City of Knoxville, 145 Tenn. 297, 303, 237 S. W. 55; Trotter v. Peterson et al., 166 Tenn. 142, 60 S. W. (2d) 149; State ex rel. v. First State Bank, 22 Tenn. App. 577, 588, 589, 124 S. W. (2d) 726; 43 Am. Jur. 73, Public Officers, Sec. 256.

■ Assuming the foregoing to be the correct interpretation of the Act, all claimants having purchase orders, contracts in writing or warrants bearing the signature of the County Judge, whether signed before or after the purchase, are entitled to recover on their

contracts. Claimants whose claims have not been so authorized or approved must recover, if at all, upon an implied contract or quantum meruit basis.

With the exception of the claim of Dow Chemical Company which requires separate treatment, we fully concur in the finding of the learned Chancellor that all of the materials represented by such claims were used on the bridges and highways of the county; that such purchases were for materials needed by the county to discharge its duty to maintain its highways and that the prices charged were reasonable and fair. ·

We also concur in the conclusion of the Chancellor that recovery on these claims should not be denied or the County Judge and Highway Commissioner held liable under their official bonds on the theory that the budget has been exceeded contrary to the inhibitions of the Act. As the Chancellor concluded no budget was ever established by the County Court as contemplated by the Act and until a budget was established it could not be exceeded by the Commissioner.

The term "budget" may be generally defined as an estimate by competent authority of revenue and expenditures—a plan or method by means of which the expenditures and revenues may be balanced for a definite period. 12 C. J. S., Budget, p. 375.

The levying of a tax for highway purposes to be augmented by receipts of undetermined amount from the State gas tax cannot be considered a budget for the guidance of the Highway Commissioner in the sense of the statute.

May recovery be allowed on quantum meruit? Cases in this State dealing with the question may be divided into two groups: (1) cases where there is a definite and positive statutory inhibition against the claimant receiv-

ing remuneration unless the claim is supported by a contract executed in accordance with the statute and (2) cases where there is no such proscription and the debt is based upon an irregularly executed or void contract for a benefit for which a lawful contract might have been executed if procedural requirements had been followed. The distinction between the two classes is clearly drawn in Kreis & Co. v. City of Knoxville, 145 Tenn. 297, 237 S. W. 55, later cited in Trotter v. Peterson, 166 Tenn. 142, 60 S. W. (2d) 149, 153, where the principle of the distinction was applied and a county held liable on an implied contract to the extent an unauthorized bank loan was used "in the improvement of the county's property." As sustaining this holding cases of the second class are cited, viz. Madison County v. Gibbs, 77 Tenn. 383; Gas Light Co. v. Memphis, 93 Tenn. 612, 30 S. W. 25; Land Co. v. Jellico, 103 Tenn. 320, 52 S. W. 995; Burns v. Nashville, 142 Tenn. 541, 591, 597, 221 S. W. 848. Cases of the first class are distinguished in the opinion.

We think this case falls within the second class. The statute does not, in terms, prohibit recovery on a contract to be implied from the benefit received and still retained by the county, though there is no valid express contract because of failure to observe the procedural requirements of the Act. The statute says only that without the approval of the County Judge the Highway Commissioner shall not have power to bind the county. Such contracts are, of course, not enforceable while still executory and claimants of this class must assume the burden of showing a benefit commensurate with the claim asserted. We are dealing in this case, however, with claims based upon irregularly executed or void contracts which have been fully performed in good faith, without fraud and without actual knowledge by

the claimants of the terms of a Private Act. The county has received the full benefit it would have received had the County Judge formally approved the purchases and we think the equities of the case should raise an implied contract to pay for the benefit actually received. Whether such claims could be allowed on quantum meruit basis if a budget had been established and exceeded we need not decide.

As to the Dow Chemical Company's claim the proof shows that it is for calcium chloride which is of doubtful utility. The county had this material in its warehouse still unused when the proof was taken. The present Commissioner thinks it cannot be economically used on county roads and is willing to allow the Chemical Company to reclaim it if it wishes to do so.

Since there is no enforceable contract supporting this claim the measure of recovery is the benefit the county has received in the furtherance of county purposes. Restatement of the Law of Restitution, Sec. 155. It cannot be forced to use materials which it does not want and then to pay for them under an implied contract. The cause will be remanded as to this claim, at the election of this claimant, for the purpose of permitting it to show, if it can, that these materials have now been used by the county and the extent of the benefit conferred on the county, but only upon condition that it pay all accrued costs incident to the filing of its claim. The decree will be, accordingly, modified.

In one other minor respect, we think the learned Chancellor was in error. This was in the allowance of an attorney's fee under the terms of a conditional sales contract and note covering road equipment purchased by the County Judge and Highway Commissioner. We are not able to find any authority for obligating the county for

this expense and none is cited by diligent and able counsel.

Some question is made of the Commissioner's failure to observe a resolution of the County Court instructing him to limit expenditures during the remainder of his term to $1,000 it appearing that his expenditures for that period were about $1,300. It is not insisted that this ac- action amounted to fixing a budget for that period and since there is nothing to indicate that the case was tried on that theory, in view of the equities of the case, we do not feel warranted in raising this doubtful question on our own motion.

In all other respects the decree of the Chancellor is affirmed. Except as indicated costs will be adjudged against the county.

Hale and Burnett, JJ., concur.