HUDSON CITY CONTRACTING COMPANY, INC., A CORPO-
RATION OF NEW JERSEY, PLAINTIFF-APPELLANT,
v. JERSEY CITY INCINERATOR AUTHORITY, A PUBLIC
CORPORATION, AND CITY OF JERSEY CITY, A MU-
NICIPAL CORPORATION, *ET AL.*, DEFENDANTS-RE-
SPONDENTS.

Argued January 3, 1955—Decided January 24, 1955.

298

*Mr. Abraham J. Slurzberg* argued the cause for the plaintiff-appellant (*Mr. Maurice A. Cohen,* attorney).

*Mr. Nicholas S. Schloeder* argued the cause for the defendant-respondent Jersey City Incinerator Authority.

*Mr. Murray Greiman* argued the cause for the intervenor-defendant-respondent Mae A. Healy.

The opinion of the court was delivered by

BURLING, J. This is a civil action. The plaintiff, Hudson City Contracting Company, a New Jersey corporation (hereinafter called Hudson), by this action, instituted in the Superior Court, Law Division, sought payment for services rendered by it in the collection of refuse substances in the City of Jersey City (hereinafter referred to as the city), the municipal corporation made a defendant herein. Performance of these services had been initiated by Hudson under contracts between it and the defendant Jersey City Incinerator Authority, a public corporation (hereinafter called the authority). These contracts were declared *ultra vires* in an independent taxpayer's suit in lieu of prerogative writ.

*Scatuorchio v. Jersey City Incinerator Authority,* 14 *N. J.*
72 (1953). Prior to the decision on the appeal in the
*Scatuorchio* case, *supra,* Hudson filed its complaint in the
present action. In the present action, on February 8, 1954
Mae A. Healy, a taxpayer (hereinafter called the intervenor)
was permitted by the Superior Court, Law Division, to inter-
vene as a defendant to Hudson's claims. The intervenor
filed an answer opposing the claims absolutely. The city
and the authority had answered, admitting liability. Sub-
sequently summary judgment for the defendants was rendered
by the Superior Court, Law Division. Hudson's appeal,
addressed to the Superior Court, Appellate Division, was
certified on our own motion prior to hearing there.

The highlights of the factual genesis of this action are
hereinafter briefly stated. The details, except as otherwise
adverted to in this opinion, are described in the opinion of
this court in the *Scatuorchio* case, *supra.*

The authority, created in December, 1951, after an abortive
solicitation of bids by the city in October, 1952, and rejection
of bids received pursuant to the authority's advertisement in
November and December 1952, purported to declare an emer-
gency and enter into an emergency contract on December 31,
1952 with Hudson for garbage and refuse removal in Jersey
City.

Hudson began performance of the December 31, 1952 con-
tract January 1, 1953. On the complaint of taxpayers, Mar-
jorie A. Scatuorchio and Michael A. Scatuorchio, Inc., the
Superior Court, Law Division, on January 6, 1953 issued
an order to show cause why the city and the authority should
not be restrained from making payments to Hudson "in
connection with" the December 31, 1952 contract. On Jan-
uary 16, 1953, hearing on the return of the order to show
cause was continued to January 23, 1953, the city and the
authority were restrained from paying Hudson any money
beyond 7/31st of the sum of $100,800 (the January 1953
payment set forth in the December 31, 1952 contract), until
further hearing, provided Hudson should continue to collect

and remove garbage and refuse in Jersey City until January 23, 1953. Temporary restraint against further payments to Hudson under the contract was ordered by the Law Division, pending final hearing on the Scatuorchio complaint, on January 23, 1953.

The authority had readvertised for bids, to be received January 19, 1953, for a contract to begin March 1, 1953. The forthcoming bids were rejected and on February 3, 1953 the authority, having received Hudson's refusal to continue performance of the December 31, 1952 contract in view of the then existing restraining order, purported to declare an emergency and award a *per diem* contract to Hudson for February 1953. Hudson, without intervening cessation of service, entered into performance thereof. Then Scatuorchios filed an amended complaint in the prior action, seeking invalidation of the February 3, 1953 *per diem* contract, and on February 5, 1953 the Superior Court, Law Division, entered an order restraining further payments to Hudson. Hudson subsequently ceased performance. It was stipulated in the present case that its total period of performance was January 1, 1953 through February 7, 1953, inclusive. The authority, after February 7, 1953, performed the work itself until Michael A. Scatuorchio, Inc. began work (March 1, 1953) under a contract let on competitive bidding.

On April 6, 1953, in the *Scatuorchio* suit, the Superior Court, Law Division, entered judgment setting aside the December 31, 1952 and February 3, 1953 contracts heretofore alluded to and enjoining the city and the authority from making any payment to Hudson.

Hudson, on May 1, 1953, while its appeal from the April 6, 1953 judgment in the *Scatuorchio* suit was yet undecided, filed its complaint in four counts, hereinafter detailed, namely two counts based on contract and two counts based on the *quantum meruit,* in the present matter hereinbefore referred to, in the Superior Court, Law Division. Hudson moved for summary judgment (the authority had filed an

answer admitting liability), but the Superior Court, Law Division, denied the motion pending the outcome of the appeal in the *Scatuorchio* case, *ante*.

This court on November 23, 1953 sustained the judgment of the Superior Court, Law Division, in the *Scatuorchio* case, *supra*, insofar as it constituted the determination that the December 31, 1952 and February 3, 1953 contracts between the authority and Hudson were *ultra vires* and unenforceable against the authority (14 *N. J.*, at *page* 93), but instructed the Superior Court, Law Division, to modify the judgment to permit the present action to proceed on the *quantum meruit* claims asserted by Hudson. (14 *N. J.*, at *pages* 94–95).

A pretrial order in the present action was filed on April 15, 1954, in which it was established that the judgment in the *Scatuorchio* case, *supra*, disposed of (*i. e.*, under the doctrine of *res adjudicata*) the first and third counts of the complaint in this case (for payment for services under the contract terms, *i. e.*, respectively the December 31, 1952 written one-year contract and the February 3, 1953 *per diem* contract). In the agreed facts it was recited that the decision of this court in the *Scatuorchio* case, *supra*, "gives Hudson leave to seek recovery in *quantum meruit* under the Second and Fourth Counts." It was agreed that "Hudson collected garbage from January 1st, to February 7th, 1953 (both dates inclusive)," and that Hudson had received a total of $26,177.95 under the contracts (before imposition of restraining orders) which, if Hudson were to prevail on the *quantum meruit*, should be credited to the defendants. The city and the authority in the pretrial order admitted liability for "actual reasonable expenses incurred" by Hudson for services rendered, but denied Hudson's claim to profits. The intervenor opposed Hudson's claim under the *quantum meruit* counts on any basis, and asserted (seemingly in conflict with the agreed statement of facts, *ante*) that our decision in the *Scatuorchio* case, *supra*, was *res adjudicata* as to these counts as well as to the contract counts hereinbefore men-

tioned. The pretrial order summarized the issues tersely as follows:

"6. The issues to be determined at the trial are 1. (a) whether plf. may recover at all on *quantum meruit* as to the Dec. 31, 1952, contract;—(b) the same thing as to Feb. 3, 1953, contract; 2. (a) reasonable value of services rendered by plf.; (b) amount of the actual reasonable expenses incurred by plf. in the performance of the work of garbage removal for which the suit is brought; (c) damages."

On the second count (for services rendered January 1 to February 3, 1953, inclusive) Hudson sought $127,238.71, and on the fourth count (for services rendered February 5, 6 and 7, 1953) Hudson sought $17,000.

The intervenor moved for summary judgment in the present case. The Superior Court, Law Division, held that as a matter of law Hudson could not recover on the *quantum meruit* for services rendered under the *ultra vires* contracts. Summary judgment in favor of the defendants was entered on May 14, 1954, as to the second and fourth counts of Hudson's complaint.

Hudson's present appeal, addressed to the Superior Court, Appellate Division, was certified on our own motion prior to hearing there, as hereinbefore noted.

The questions involved on this appeal include: (a) whether the contractor may recover on the *quantum meruit* for services rendered under the *ultra vires* contracts with the public corporation; (b) whether the principle of law, that an express contract must be rescinded before an implied contract may be resorted to, obtains under the circumstances of this case; and (c) whether our decision and judgment in the *Scatuorchio* case, *supra*, is *res adjudicata* of Hudson's claims on the *quantum meruit*.

## I. QUASI-CONTRACTUAL LIABILITY OF MUNICIPAL CORPORATIONS

The substantial question involved in this case is whether there may be any recovery on the *quantum meruit* for services

performed under the *ultra vires* contract with the public corporation, the authority.

 The basic rule, applied in the *Scatuorchio* case, *supra,* is that there can be no recovery under an express municipal contract entered into without observing the mandatory legal requirements specifically regulating the mode by which a municipal power is to be exercised. *Cf.* 10 *McQuillin, Municipal Corporations* (3d ed. 1950), *sec.* 29.26, *p.* 257. Where express contracts must be preceded by certain steps or made in a certain way there is "considerable authority, however, to support the rule that a recovery may be had on a *quantum meruit* \* \* \* upon the theory that it is not justice, where a contract is entered into between a municipality and another, *in good faith,* and the corporation has received benefits thereunder, to permit the municipality to retain the benefits without paying the reasonable value therefor \* \* \*" (Emphasis supplied). *Id., sec.* 29.112, *pp.* 458–460. Compare *Driscoll v. Burlington-Bristol Bridge Co.,* 8 *N. J.* 433, 475 (1952), *certiorari* denied *Burlington County Bridge Comm. v. Driscoll,* 344 *U. S.* 838, 73 *S. Ct.* 25, 97 *L. Ed.* 652 (1952), rehearing denied 344 *U. S.* 888, 73 *S. Ct.* 181, 97 *L. Ed.* 687 (1952).

The American law on this subject has incurred academic criticism for its apparent confusion. In 1911 it was said "The cases upon this subject are truly bewildering." *Jerome C. Knowlton, The Quasi-Contractual Obligation of Municipal Corporations,* 9 *Mich. L. Rev.* 671 (1911). It was suggested by Knowlton that favoritism and extravagance on the part of municipal officials call for limiting, rather than extending, the remedy of recovery by a contractor on the *quantum meruit. Id., p.* 676. See also *Id., p.* 683. Twenty-three years later it was observed, "The liability of municipal corporations in *quasi*-contracts, that is upon contracts implied in law, has never been satisfactorily worked out by our courts \* \* \*" *C. W. Tooke, Quasi-Contractual Liability of Municipal Corporations,* 47 *Harv. L. Rev.* 1143 (1934). The latter essay discusses the varying juridical philosophies on the subject

and reaches the conclusion that "* * * there would seem to be no reason why a municipal corporation should not be held to respond upon principles of *quasi*-contract for services rendered or materials furnished under invalid contracts *intra vires* the corporation." *Id., p.* 1171. A similar current analysis of the authorities on the subject demonstrates that no clear-cut solution has been attained. *Chester James Antieau, The Contractual and Quasi-Contractual Responsibilities of Municipal Corporations,* 2 *St. Louis Univ. L. J.* 230 (1953).

While these articles, as well as McQuillin's work, cited *ante,* and other authorities on the subject, point to seeming divergent judicial expression, the general principles, namely the contrapositive principles of public policy and unjust enrichment, appear to have general recognition. It is the application of these principles under varying constitutional and statutory provisions and factual circumstances that sets the scale of justice for or against the contractor. For example, the California Supreme Court in *Reams v. Cooley,* 171 *Cal.* 150, 152 *P.* 293 (1915), held that recovery on the *quantum meruit* may be had where the general power to contract concerning the subject matter exists except where the power is limited by statute. The Commission of Appeals of Texas, on error to the Court of Civil Appeals of Texas, analyzed the authorities elsewhere (including New Jersey) and in Texas, in *Sluder v. City of San Antonio,* 2 *S. W.* 2d 841 (1928). The *Sluder* case holds (2 *S. W.* 2d, at *page* 842):

"* * * while such contracts are void, and no recovery is permitted thereon, our courts hold that common honesty and fair dealing require that a county or municipality should not be permitted to receive the benefit of money, property, or services, without paying just compensation therefor * * *"

In the *Sluder* case, *supra,* the general power to contract on the subject existed, but the municipality failed to follow the mandate of a statutory (charter) provision as to the mode of contracting. Recovery was allowed *not* in reference to the

void contract but on implied contract. However, Sluder was deprived of "unconscionable profits." *Cf.*, for example, *W. W. Cook & Son v. City of Cameron*, 144 *Mo. App.* 137, 128 *S. W.* 269 (*Ct. App.* 1910); *Lively v. Webb City*, 106 *S. W. 2d* 517 (*Mo. Ct. App.* 1937); *Watterson v. Mayor, etc., of City of Nashville*, 106 *Tenn.* 410, 61 *S. W.* 782 (*Sup. Ct.* 1901); *J. A. Kreis & Co. v. City of Knoxville*, 145 *Tenn.* 297, 237 *S. W.* 55 (*Sup. Ct.* 1921). The implied contract theory was approved but held inapplicable for other reasons in *Luzerne Tp. v. Fayette County*, 330 *Pa.* 247, 199 *A.* 327 (*Sup. Ct.* 1938).

In New Jersey, recovery on the *quantum meruit* where a contract was invalid was approved in *Armitage v. Essex Construction Co.*, 88 *N. J. L.* 640, 641 (*E. & A.* 1916). In *State v. Kuehnle*, 85 *N. J. L.* 220, 227–228, 88 *A.* 1085, 1089 (*E. & A.* 1913), the former Court of Errors and Appeals held "that, if the express contract was not binding, there was still an implied contract," and approved the rule that "a recovery against a municipal corporation (exists) upon an implied contract, where the express contract is set aside by the court." The case of *Eckert v. Town of West Orange*, 90 *N. J. L.* 545, 549 (*E. & A.* 1917), was not basically opposed to the foregoing authorities and approved them and other similar decisions (see 90 *N. J. L.*, at *pages 550–552*).

In the *Armitage* case, *supra*, good faith was relied on as an essential factor of the contractor's claim (see 88 *N. J. L.*, at *page* 642). *Cf. State v. Kuehnle, supra* (85 *N. J. L.*, at *pages* 228–229). In the *Eckert* case, *supra*, no resort to emergency powers (if any then existed) was attempted and the statute referred to was not complied with. The former Court of Errors and Appeals, in the *Eckert* case, *supra*, held that recovery on the *quantum meruit* may be had "where there has been some unimportant irregularity in the proceedings, *or an innocent mistake as to some matter of fact*" (emphasis supplied), but in the case before it found a "direct defiance of an act of the Legislature." (90 *N. J. L.*, at *page* 550).

Eckert, the former Court of Errors and Appeals held, "was a party to a scheme to evade and nullify a well-defined public policy of this state" (90 *N. J. L.*, at 552). *Cf. Wenlink v. Board of Chosen Freeholders of County of Passaic*, 66 *N. J. L.* 65, 67 (*Sup. Ct.* 1901). Compare 2 *Restatement of the Law, Contracts* (1932), *sec.* 599, *comment* (*c*), *p.* 1113.

We held in *Scatuorchio v. Jersey City Incinerator Authority, supra*, that the authority was a municipal body having and exercising essential governmental functions (14 *N. J.*, at *page* 89); that it had exclusive power over scavenger contracts in Jersey City (14 *N. J.*, at *page* 89); that *R. S.* 40:50–1 and *R. S.* 40:66–4, as am. *L.* 1942, *c.* 133, *sec.* 1, controlled its actions on scavenger contracts; that bids were not properly received under these statutes, and the purported invoking of the emergency clause of *R. S.* 40:50–1, *supra*, was abortive (14 *N. J.*, at *pages* 84 *et seq.*). We therefore held that the contracts, failing to comply with the mandatory statutory procedures, were *ultra vires*. As above noted, we held that the *power* to contract existed (14 *N. J.*, at *pages* 84, 87, 89–91, 93).

Our holding in the *Scatuorchio* case, *supra*, in other words, was that the *power* existed in the authority to make an emergency contract, both in December 1952 and in February 1953. The directory provisions of the statute (*R. S.* 40:50–1, *supra*) were not complied with. The December 1952 declaration of emergency was held defective for failure to state the nature of the emergency and the approximate amount to be expended in meeting the emergency (14 *N. J.*, at *page* 87); the February 3, 1953 declaration of emergency was held to be an incomplete declaration of the fact of the alleged emergency (14 *N. J.*, at *page* 93). In both instances we held the alleged emergency did not exist in fact. (14 *N. J.*, at *pages* 92, 93). It is true that we observed that the declaration of emergency by the authority "appears at best to have been an attempt to avoid the pertinent legislative enactments and public responsibility" (14 *N. J.*, at *page* 88), but we did not determine the question. We expressly decided that the ele-

ment of bad faith was not an issue determined in the *Scatuorchio* case, *supra* (14 *N. J.*, at *page* 92).

*Bauer v. City of Newark,* 7 *N. J.* 426 (1951), is not contrary to the views hereinbefore expressed. In the *Bauer* case, *supra,* the present question was not reached because a specific statute precluded resort to the *quantum meruit* theory, namely *R. S.* 40:2–29, as am. *L.* 1945, *c.* 155, *sec.* 1.

In summary, we find that the New Jersey law pertinent to this type of case is that where the contract was not within the corporate power no recovery may be had by the contractor either on express or implied contract; where the Legislature expressly prohibits the incurring of liability on contract or otherwise no recovery may be had either on express or implied contract; but where the power to contract lies within the competence of the municipal corporation and there has been an irregular exercise of that power *in good faith,* recovery on the *quantum meruit* may be had although the express contract is void. *Cf. Potter v. Borough of Metuchen,* 108 *N. J. L.* 447, 450–451 (*Sup. Ct.* 1931).

The final facet of this subject is the extent to which recovery may be allowed. The ordinary rule for the measure of damages where the suit is based on the *quantum meruit* is the reasonable value of the services rendered. In the *Burlington-Bristol Bridge Co.* case, *supra* (8 *N. J.*, at *p.* 475), the county was allowed to keep the bridge, *i. e.,* to retain the benefits of the contract, while the selling syndicate were required to "disgorge the profits which they received from this illegal transaction." (8 *N. J.*, at *pages* 499–500). In the present case the benefits were received by the defendant authority (and incidentally by the City of Jersey City and the taxpayers therein). The services rendered cannot be restored to Hudson.

If the contracts were entered into and the services were performed by Hudson in good faith, the measure of damages in the present case is the reasonable expense of the performance of services actually rendered, but not in excess of its actual expenses, and deleting profits.

## II. Rescission

The next question involved is whether Hudson should have rescinded the contracts in question to enable Hudson to recover on the *quantum meruit*.

■ The intervenor contended that where an express contract is pleaded no recovery may be had on the theory of implied contract in absence of rescission of the express contract. *C. B. Snyder Realty Co. v. The National Newark & Essex Banking Co.*, 14 *N. J.* 146, 162 (1953); *Moser v. Milner Hotels, Inc.*, 6 *N. J.* 278, 280–281 (1951). This rule does not apply here. The express contracts were not merely voidable but were set aside as *ultra vires* and void *ab initio* by the court. Under these circumstances, the authorities hereinbefore discussed pertinent to the question of *quasi*-contractual liability of municipal corporations control.

## III. Res Adjudicata

The final question involved is whether the judgment of this court in the *Scatuorchio* case, *supra*, is *res adjudicata*, barring Hudson's present claims on the *quantum meruit*.

We expressly determined in the *Scatuorchio* case, *supra*, that the complaint and amended complaint by Scatuorchios did not raise this issue, that Hudson (a defendant therein) did not assert a cross-claim on this theory, that the trial court therein did not pass thereon, and that another action (the present one) raised the issue (14 *N. J.*, at *page* 94). We held that the judgment in the *Scatuorchio* case, *supra*, should be amended so as to remove any question that it might bar the present suit (14 *N. J.*, at *pages* 94, 95).

■ At the oral argument it was urged by the intervenor that Hudson's claim on the *quantum meruit* is barred by estoppel (*i. e., res adjudicata*) for failure to assert that issue as a counterclaim in the *Scatuorchio* action. *Rule* 3:13–1, as am. December 7, 1950, now *R. R.* 4:13–1, authorized a counterclaim "against the opposing party." This is clearly inapplicable for Hudson had no claim, and in the present

action asserts no claim, against Marjorie A. Scatuorchio and Michael A. Scatuorchio, Inc., the plaintiffs in the other suit.

However, it was argued that Hudson should have interposed the issue under the philosophy of *Massari v. Einsiedler*, 6 *N. J.* 303, 311–312 (1951). The *Massari* case, *supra*, declared the rule of estoppel against subsequent assertion of a claim that was available as a defense in the prior suit. See *R. R.* 4:12–2. Compare *Kelleher v. Lozzi*, 7 *N. J.* 17, 22–23 (1951); *Mechanical Devices Co. v. General Builders*, 15 *N. J.* 566, 572 (1954). The *Massari* case, *supra*, is not applicable. The *Scatuorchio* case, *supra*, was brought to set aside the two contracts and prevent payment under the express terms of the contracts. The Scatuorchio's complaint was actively resisted by the city and by the authority, which supported the contracts. Hudson contended on the former appeal that it was entitled to a disposition of the *quantum meruit* issue in the *Scatuorchio* case, but we held otherwise and expressly declared that the issue had not been raised by the pleadings and was subject to disposition in the present action (see 14 *N. J.*, at *page* 94). Further, under the circumstances of these cases the claim on the *quantum meruit* results as a practical matter from the invalidation of the contracts, and on this basis in view of the authority's support of the contracts the *quantum meruit* claim would have been premature in the *Scatuorchio* suit. Not only is this so, but the *quantum meruit* claim could not have been asserted by Hudson as a defense to the Scatuorchio's suit to set aside the contracts and was therefore not required to be pleaded under *R. R.* 4:12–2, *supra*. The *quantum meruit* claim could have been asserted by Hudson in the *Scatuorchio* suit against Hudson's codefendant, the authority, by cross-claim under *Rule* 3:13–6 (now *R. R.* 4:13–6). However, *Rule* 3:13–6 (now *R. R.* 4:13–6), *supra*, is permissive and not mandatory.

The doctrine of *res adjudicata* is a bar only "to questions * * * tendered by the pleadings, save where consent or waiver rule otherwise." *Baldwin Const. Co. v. Essex County Board of Taxation*, 16 *N. J.* 329, 345 (1954).

We find no consent, waiver or estoppel here. Compare *Ajamian v. Schlanger*, 14 *N. J.* 483 (1954); *Republic of China v. Pong-Tsu Mow*, 15 *N. J.* 139, 147 (1954); *Bango v. Ward*, 12 *N. J.* 415, 424-425 (1953).

## CONCLUSION

In summary, we find that our decision in *Scatuorchio v. Jersey City Incinerator Authority, supra,* is not *res adjudicata,* and that the circumstances of this case would permit recovery on the *quantum meruit* provided the factor of good faith is developed and proven. In the absence of adequate presentation of the pertinent facts in the record palpably showing no dispute as to the fact of good faith or absence of good faith, summary judgment was premature.

For the reasons expressed in this opinion the judgment of the Superior Court, Law Division, is reversed. The cause is remanded to the Superior Court, Law Division, for further proceedings not inconsistent with this opinion.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.