# INTER–ISLAND TRANSPORT LINE, INC.

## v.

## GOVERNMENT OF THE VIRGIN ISLANDS, Appellant

No. 75-1999

United States Court of Appeals

Third Circuit

Argued April 28, 1976

Filed August 3, 1976

363

WILLIAM L. NEFF, Esq., Deputy Assistant Attorney General, Department of Law, St. Thomas, V.I., *for appellant*

JOHN E. STOUT, Esq. (GRUNERT, STOUT, HYMES & MAYER), Charlotte Amalie, St. Thomas, V.I., *for appellee*

Before VAN DUSEN, ADAMS and ROSENN, *Circuit Judges*

ROSENN, *Circuit Judge*

A perennial water shortage presents the Virgin Islands with a unique version of a problem which is endemic to governmental bodies today—lack of liquidity. The present case reflects the efforts of the Virgin Islands Government to alleviate its water problem by obtaining the precious liquid from Puerto Rico. Plaintiff Inter-Island Transport Line Co. ("Inter-Island") hauled water for the Government over a period of more than a year. It filed suit in the United States District Court for the District of the Virgin Islands to recover payments allegedly due both under its contract with the Government and for water delivered after the expiration of the contract period, totalling $81,121.56. The district court entered judgment in this amount[1] against the Government and dismissed the Government's two counterclaims against Inter-Island. The Government appeals from the judgment for the post-contract period only, a sum of $61,126.98, and from the dismissal of its second counterclaim for all the payments previously made to Inter-Island. We affirm.

## I.

The facts as found by the district court are straightforward. The Government, in May 1967, contracted with West Indies Transport Company ("West Indies") to haul water for a year, which contract was renewed in 1968 and 1969. The last contract was executed on June 25, 1969, and was assigned to Inter-Island, one of West Indies' principals. It called for minimum governmental purchases of 30,000 tons of water per month.

After Inter-Island's contract expired on April 30, 1970, it continued to deliver water to the Government for about two

---

[1] The court also awarded interest of $24,084.29, costs, and attorneys' fees of $2,500 against the Government.

and a half months, and the Government continued to accept delivery. Nonetheless, the Government refused to pay for the last month's deliveries, whereupon Inter-Island sued for a sum of $61,126.98. The court entered judgment in that amount for Inter-Island, and the Government appeals.

The Government also appeals from the dismissal of its counterclaim for $2,092,473.92 plus interest, representing the entire amount of its payments to Inter-Island over 1969 and 1970. Alleging that the contracts and purchase orders were ineffective as contrary to law, the Government claims that it is entitled to recover the payments under a statute authorizing such suits. The district court dismissed the counterclaim, holding that the purchases were made pursuant to law.

The Government's appeal brings before this court the issue of its authority to purchase water in the absence of competitive bidding and, during the post-contract period, without approval by the Commissioner of Property and Procurement. If the Government had such authority, it may not recover funds expended under the contract and during the post-contract months; nor may it refuse to pay Inter-Island for the water which it accepted during the latter period.

## II.

31 V.I.C. § 232 provides that the Commissioner of Property and Procurement ("Commissioner") shall "purchase or contract for all supplies, materials, equipment and contractual services, in the manner described in this chapter . . . ." Sections 235 and 236 mandate competitive bidding before making any purchase, except as provided in section 239. It is uncontroverted that the Government did not follow the competitive bidding procedures set forth in section 236 in making purchases from Inter-Island both under contract and during the post-contract period.

The possibly relevant exceptions to the bidding requirement, as contained in section 239, amended February 20, 1970, are:

(a) Supplies, material and equipment may be purchased and contractual services negotiated for, in the open market without observing the provisions of section 236 of this title provided—

(1) the Governor declares, in the public interest by Proclamation that a State of Emergency exists and specifies in such Proclamation those purchases and/or services which may be obtained without observing the provisions of said section 236;

(2) the public exigency demands such immediate action due to sudden, unexpected, and unforeseen occurrence, happening or condition; And provided further, That all requisitions pursuant to this subdivision shall be clearly stamped "Public Exigency";[2]

\* \* \*

(8) the purchase or contract is for property or services for which it is impracticable to obtain competition;

The Commissioner who executed the 1969 contract testified that he had relied on the emergency and exigency provisions as authority to enter into the contract on the open market. The district judge scoffed at considering a water shortage on the Virgin Islands anything but a foreseeable, commonplace occurrence: "[T]he acute need for water could always have been foretold years in advance by even the least prescient in our midst." Memorandum opinion at 7. He concluded that the purchases of water on the open market were nonetheless legal under the exception in section 239(a)(8), as it was impracticable to obtain competition by formal advertising.

The regulations under section 239(a)(8) list illustrative examples of circumstances in which it is "impracticable to obtain competition." The only example here relevant applies when the "property or services can be obtained from only one person or firm (sole source of supply)." 31

---

[2] In 1969, when the contract was executed, this subsection read:

(2) the public exigency will not permit the delay incident to advertising;

V.I. Rules & Regs. § 239-3(h) (1968).[3] The district court determined that "plaintiff was the only responsible company in the area capable of supplying the Government with the quantities of water it needed. . . . Plaintiff was, in fact, the 'sole source.' " Memorandum opinion at 8. The Government challenges the applicability of the "sole source" exception on several grounds.

 First, in its brief to this court the Government, citing SEC v. Chenery Corporation, 318 U.S. 80 (1943), contended that the court was precluded from relying on a theory different from that invoked by the Commissioner to support his open market procurement. At oral argument, however, the Government conceded that the Chenery rule is inapplicable to the instant case. Here the district court was concerned with the legality of the Government's past procurement as a defense to a suit for money owed. The theory upon which the Commissioner acted in making the procurement in the open market did not constitute an administrative judgment. The district court did not intrude on an agency's expertise; it did not impermissibly substitute a judicial judgment for an administrative decision.

We conclude that the district court did not err when it departed from the rationale offered by the former Commissioner for a decision he had made years earlier. The remaining contentions by the Government are directed at the district court's formulation of the "sole source" exception and its application to Inter-Island.

The Government would require the practicability of competition to be measured in terms of the "relevant market" as defined by monopolization cases under section 2 of the Sherman Act, 15 U.S.C. § 2 (1971). It cites no authority for thus bodily importing a concept from federal

---

[3] New regulations adopted in 1974 contain the identical language. See 31 V.I. Rules & Regs. § 239-12(a)(1) (1974).

antitrust law into the procurement requirements of the Virgin Islands Code, and we can discover none.

■ The exception contained in section 239(a)(8) exists to allow open market purchases from a supplier where the solicitation of competitive bids would be an exercise in futility.[4] The inquiry focuses upon the probable results from advertising for bids in newspapers of general circulation in the Virgin Islands pursuant to 31 V.I.C. § 236(a), not upon the possibly anticompetitive behavior of a supplier.

The "sole source" exception is based upon the common sense premise that, where there is only one satisfactory supplier, inviting bids would be fruitless and would not produce competition. The source of supply must be the only one capable of timely responding to solicitation of bids in newspapers generally circulating in the Virgin Islands. Hence, the Government's proposed theory of "relevant market" composed of all the liquid-carrying tankers and barges in the world, even if it may be pertinent in an antitrust context, is utterly irrelevant to the practicability of obtaining competition by means of advertising for bids.

The Government's disastrous experience with advertising for bids before the period under consideration made it reluctant to repeat that procedure. The low bidder in 1966, apparently the only water carrier in the area besides West Indies and its principals, failed to meet its contractual obligations. The Government in desperation turned to West

---

[4] The current regulations contemplate the application of section 239(a)(8) when inter alia bids have been invited and no responsible supplier has responded, the existence of a patent or copyright precludes competition, rates for certain services are regulated, the services sought pertain to perishables, contractors are already at work and demobilization is impracticable, it is impossible to draft adequate specifications, or replacement parts are needed for equipment specially designed by the manufacturer. 31 V.I. Rules & Regs. § 239-12 (1974). The non-exhaustive listing of these illustrative examples answers another Government contention—that section 239(a)(8) is a very narrow exception, applicable only to legally enforceable monopolies and technologically complex products.

Indies to haul its water. Thereafter, no other reliable supplier capable of providing water hauling services appeared on the scene, according to the uncontroverted testimony of the President and the Secretary of West Indies and the deposition of the former Commissioner.[5] The Secretary of West Indies testified about existing sources of supply when the three contracts were negotiated with his company in 1967, 1968, and 1969:

> [W]hen the first contract was done the year prior to that the government had another contractor and that contractor, we were told, was not performing. But other than that contractor there really wasn't anybody else in this hemisphere who was in the water carrying business.

█ The Government could reasonably have concluded that advertising for bids in this situation would be futile. To require it to undertake the time and expense for an exhaustive search for possible competition for Inter-Island would eviscerate the impracticability exception to the competitive bidding procedures. The trial judge, in his review of the Government's authority to invoke the section 239(a)(8) exception, was thus not required to make the sort of findings relating to competition which are necessary in cases under section 2 of the Sherman Act.

Attacking the district court's findings on another ground, the Government argues that Puerto Rico Lighterage was a competitor of Inter-Island and therefore the judge's finding to the contrary is clearly erroneous under Fed. R. Civ. P. 52(a). Puerto Rico Lighterage succeeded Inter-Island as the Government's water hauler. However, the district court found that, prior to that time and during the period in which the Government was purchasing water

---

[5] In reviewing the non-availability of a capable competitor to perform "this highly specialized service" (a characterization of the trial judge), the district court observed that "[t]he plain unvarnished truth is that at the time of these transactions there was not another water hauler to whom the Government could have turned in its hour of need."

from Inter-Island, Puerto Rico Lighterage was not competitive.

The court noted that the Government apparently found it necessary to modify the terms of its water hauling contract in order to aid Puerto Rico Lighterage in assuming the water haul operations. The Government "increased the maximum allowable deliveries, constructed new piers specifically adapted to Puerto Rico [Lighterage's] operation and advanced to it some $20,000, in order that Puerto Rico [Lighterage] might obtain the single vessel which it employs in its water haul operations." Memorandum opinion at 8.

■ Our review of the record does not persuade us that the judge's finding was clearly erroneous under the well-established standards discussed in, e.g., Rochez Brothers, Inc. v. Rhoades, 527 F.2d 880, 887 (3d Cir. 1975), pet. for cert. filed, 44 U.S.L.W. 3609 (April 27, 1976); Krasnov v. Dinan, 465 F.2d 1298, 1309 (3d Cir. 1972). Puerto Rico Lighterage did not respond when the Government published an invitation for bids in April 1970. It was only after the Government promised it substantial assistance that the company entered into a water hauling contract. The district judge reasonably inferred that Puerto Rico Lighterage was thus not a viable competitor of Inter-Island during 1969 or the first part of 1970.

In sum, while we firmly adhere to the salutary purposes and principles of competitive bidding in governmental procurement and contracts, we agree with the district judge that the Government had authority to enter into an open market contract with Inter-Island in 1969 under the exception found in section 239(a)(8). Inasmuch as Inter-Island was the only experienced water hauler available at the time with the capability of rendering the highly specialized service required, the district court did not err in holding that Inter-Island constituted the "sole source" for

water hauling services as defined by the regulations promulgated under the foregoing statute.

## III.

Although the Government may properly have contracted with Inter-Island, it claims that the post-contract deliveries which it admittedly received were entirely unauthorized and that it has no obligation to pay for them. Alphonso Holder, the Commissioner, testified that he did not approve any procurements of water during the year 1970. The Government contends that the unauthorized deliveries were therefore contrary to the express language of 31 V.I.C. §§ 233 and 234 (1967).

Section 233 provides:

The Commissioner of Property and Procurement shall not issue any order for delivery on a contract or open market purchase unless the request for purchase bears certification that there is to the credit of the department . . . concerned a sufficient unencumbered apportionment of its appropriation balance, in excess of all unpaid obligations, to defray the amount of such order.

Section 234, which was "inserted in the interest of better enforcement of laws relating to procurement of supplies" according to the Revision Note, provides in its subsection (a):

No purchase shall be made by any department or agency of the government or by any employee of the government for any agency of the government except by written order approved by the Commissioner of Property and Procurement and issued in accordance with section 233 of this title.

The district judge found the post-contract purchases authorized without making an express inquiry into the Government's compliance with open market procurement procedures. The record provides no support, however, for the Government's contention that the purchases were illegal.

Sections 233 and 234 must be read with 33 V.I.C. § 3019 (1967). The latter allows the transfer of funds from other departments and agencies to a general fund expense account administered by the Government of Finance and/or the Department of Property and Procurement "[f]or the purpose of facilitating the processing and payment of obligations of the Government of the Virgin Islands for ... potable water ... services ...." It is an implied exception to the general prohibition against purchases without a sufficient unencumbered appropriation balance. Thus, the regularity of the June and July water purchases must be measured against the clear legislative intent to introduce flexibility into purchases of water.

Moreover, the Commissioner did substantially comply with the general requirements of the procurement statutes. He instituted competitive bidding procedures in March 1970, and informed Inter-Island that the Government would not exercise its contract renewal option. Unfortunately, in response to the invitation for bids only two companies submitted bids—Inter-Island and the low bidder, Pan Hemisphere Transport, Inc. As the district judge observed, the latter was so financially unsound that the United States Marshal seized all of its ships shortly thereafter and sold them for its debts.

The Government refrained from awarding a contract based on either bid because, as Commissioner Holder testified, there was no money available. The Comptroller's Audit Report on the Procurement and Transport of Water, introduced into evidence by the Government, refers to a meeting on April 30, 1970, in which the lack of funds was discussed and a decision reached to advise Inter-Island "to continue delivering water after the expiration of their contract." Commissioner Holder was present at that meeting, and he later wrote the Governor to convey the sense of the meeting.

■ The Government's comment on the Audit Report, incorporated into the final draft, justifies the purchase of water without a formal contract after April 30, 1970:

Due to the fact that during short intervals the Virgin Islands Water and Power Authority could not supply sufficient water the public exigency required an arrangement for day to day short notice supply during those periods. These purchases were made through the only available company under such an arrangement.

We believe Commissioner Holder's carefully considered decision to continue periodic purchases from Inter-Island after April is tantamount to approval of those purchases under section 234.

■ Even assuming arguendo that the purchases were unauthorized, Inter-Island asserts its right to recover for water deliveries on a theory of quantum meruit. See Annot., 154 ALR 356, 367 (1945). The Government accepted the deliveries and paid for them from May 1 through June 15 as demonstrated by biweekly Government Miscellaneous Disbursement Vouchers, entered into evidence by Inter-Island. The company had no notice that payment for further deliveries would not be forthcoming. Thus, we conclude that even if the Government did not comply with its own statutory procurement procedures, Inter-Island is entitled to recover the fair value of its water hauling services according to long-established principles. See, e.g., Clark v. United States, 95 U.S. 539, 542 (1877); Gamewell Co. v. City of Phoenix, 216 F.2d 928, 940 (9th Cir. 1954), amended 219 F.2d 180 (1955); Independent Paving Co. v. City of Bay St. Louis, 74 F.2d 961, 963–64 (5th Cir. 1935); Hudson City Contracting Co. v. Jersey City Incinerator Authority, 111 A.2d 385, 389–91 (N.J. 1955); Annot., 33 ALR 3d 1164 (1970).

## IV.

The Government contends that contractors are precluded

374

from asserting a theory of quantum meruit against the Government by reason of 31 V.I.C. § 249 (1967) as interpreted in Government of Virgin Islands v. Ottley, Nos. 3-1970, 285-1970, and 58-1970 (D.V.I. March 7, 1972), and Sargeant v. Government of Virgin Islands, 10 V.I. 245 (D.V.I. 1973), both authored by Chief Judge Christian, the trial judge in this case. The Government also relies on the above authorities in pressing its counterclaim to recover all payments made to Inter-Island in 1969 and 1970.

Section 249 provides:

Any purchase order or contract executed in violation of this chapter and of the rules and regulations promulgated for its enforcement, shall be null and ineffective and, if public funds have been expended in relation therewith, the amount so expended may be recovered in behalf of the Government of the Virgin Islands through proper action instituted for such purpose.

The Government in Ottley sought recovery of public funds expended without compliance with bidding procedures. The district court interpreted section 249 strictly to foreclose the contractors from asserting a defense of estoppel or quantum meruit. A fortiori, under Ottley a contractor would be prohibited from using their theory offensively to recover money allegedly owed for unauthorized purchases.

■ Quite clearly Ottley is inapplicable to the instant case since the court made its ruling prospective only. Memorandum opinion at 4 (unreported). As the latest of the transactions at issue here occurred in July 1970, almost two years before the decision in Ottley, there is no doubt that Ottley does not govern. The Government's reliance on Sargeant, supra, is similarly unfounded. First, insofar as Sargeant relies on Ottley, it is subject to the same temporal limitation on its applicability. In addition, Sargeant concerned an attempt by the executive branch "to encumber territorial revenues without a legislative appropriation

375

therefor." 10 V.I. at 251. In the case of potable water services, 33 V.I.C. § 3019 confers on the executive branch express authorization to do just that.

The judgment of the district court will be affirmed.